MOORE ET AL. *v.* THE POLK SANITARY MILK COMPANY ET AL.

[No. 26,312. Filed March 3, 1936.]

*Collins & Lewis, A. J. Rucker, B. Howard Caughran* and *Davis M. Lewis,* for appellants.

*Henry M. Dowling* and *Walter Pritchard,* for appellees.

ROLL, C. J.—This is an appeal by Russell Moore and Earl Marple, from a judgment of the Superior Court, adjudging them guilty of indirect civil contempt, upon an information filed by the appellee The Polk Sanitary Milk Company.

On August 31, 1932, The Polk Sanitary Milk Company filed a suit in the Superior Court asking for an injunction against one Frank Dowden, and on September 2, 1932, the court issued a temporary restraining order against him.

On October 11, 1932, a permanent injunction was entered by agreement of the parties.

On December 23, 1932, The Polk Sanitary Milk Company filed the information herein against appellants, and upon a hearing the court found appellants guilty of the acts charged and fined each appellant the sum of two hundred dollars, and costs, and provided in the

judgment that the fine should inure to the benefit of The Polk Sanitary Milk Company.

Appellants filed their motion for a new trial and their motion to modify the judgment. Each motion was overruled and appellants appealed.

Appellants assign as error: (1) the overruling of their motion for a new trial; (2) the overruling of their motion to modify the judgment; (3) and (4) the court did not have jurisdiction of the persons of appellants; (5) the court did not have jurisdiction of the subject-matter; (6) that the judgment is null and void because not made and entered by a judge of the court in the cause and proceeding; and (7) the purported judgment and decision below made and rendered by the Honorable Russell J. Ryan as purported special judge in the cause on January 11, 1933, against these appellants as and for contempt in violating final decree of permanent injunction rendered on October 11, 1932, by the court in the cause, is and was at all times null and void, the said Honorable Russell J. Ryan having been selected and appointed on September 30, 1932, as special judge only for the trial resulting in said final decree of permanent injunction, with all his power and authority as such special judge at an end at all times after October 11, 1932.

Appellants, perhaps for the purpose of a background, and in order that the present appeal might be better understood, have incorporated in their brief and also in the transcript the record and evidence in other proceedings including the complaint of the Polk Sanitary Milk Company against Frank Dowden, the information filed against said Dowden for contempt, and the judgment against Frank Dowden and Kaleb Johnson, the evidence given at said hearing.

It appears from the record of these proceedings, not the proceeding involved in this appeal, that on July 30;

1932, one Frank Dowden entered into a written contract of employment as a milk deliveryman on Route No. 2, with the Polk Sanitary Milk Company; that said contract provided among other things:

"That at no time during the term of said employment, or for a period of nine (9) months immediately following the termination of his employment by the said party of the first part or upon his quitting his service, will he for himself or on behalf of any other person, persons, company or corporation, deliver or sell any dairy products to any customer or agent of said party of the first part canvassed or supplied by him along any route at any time during his employment hereunder, nor will he, in any way directly or indirectly for himself, or in behalf or, in conjunction with any other person, persons, company or corporation, solicit, divert or take away, or attempt to solicit, divert or take away any of such customers or the business or patronage of any such customer of said party of the first part during the aforesaid time, . . . and that he will not disclose or divulge, directly or indirectly to any other person, persons, company or corporation the names or addresses of said customers, . . ."

On September 2, 1932, The Polk Sanitary Milk Company filed a suit for an injunction against Frank Dowden and alleged therein, among other things, that on August 28, 1932, said Dowden terminated his employment and in violation of the above provisions of his contract, "is now engaged in soliciting, diverting and taking away the customers of the plaintiff along the route known as route 2, . . . ; that among the patrons of the plaintiff whom he has solicited are, Louis A. Herald, 819 Christian Place; F. A. Cain, 41 Delaware Court; Wm. H. Evans, 234 N. Alabama Street; Mrs. Elenor Immes, 1215 N. Alabama Street; E. Duncan, Seminole Hotel; W. S. Cummings, 1964 N. Alabama Street." A copy of the agreement between the parties was filed with the complaint.

The plaintiff in that suit filed an undertaking, and

the court issued a temporary restraining order against the defendant and fixed the date for hearing on the injunction on September 10, in Superior Court Room 1. Upon a motion and affidavit for a change of venue the cause was venued to Room 5, Superior Court of Marion County. On October 11, 1932, the court found that a temporary injunction should be granted and upon agreement of the parties the temporary injunction was made permanent. The injunction restrained Frank Dowden, for a period of nine (9) months immediately following August 28, 1932, "for himself or on behalf of any other person, persons, company or corporation, from delivering or selling any dairy products to any customer or agent of the Polk Sanitary Milk Company, or from, in any way, directly or indirectly, for himself or on behalf of any other person, persons, company, or corporation, or in conjunction with them, soliciting, diverting, or taking away or attempting to solicit, divert or take away any of the customers or the business or patronage of any of the customers of the said Polk Sanitary Milk Company along or within the boundaries of the route bounded and described as follows: On the south by St. Clair Street; on the north by East 16th Street; on the east by Park Avenue; on the west by Pennsylvania Street, all in the City of Indianapolis, Marion County, Indiana."

On December 14, 1932, the plaintiff filed its affidavit for citation of defendant Frank Dowden to show cause, if any he had, why he should not be punished as and for contempt for violation of the injunction heretofore rendered. This affidavit charged that Frank Dowden, after the injunction was issued, "did continue to deliver dairy products to customers of the plaintiff, along the route known as route two, and indirectly and in conjunction with one Kaleb Johnson." The affidavit set out the names and addresses of six persons to whom the affiant

said the defendant delivered dairy products. The court ordered notice to defendant Dowden to appear on December 17, 1932, and show cause why he should not be punished for contempt of court for violating the order of the court heretofore set out. Dowden's hearing was had on Saturday, the 17th of December, and after hearing Dowden, the court said he wanted to hear Johnson and ordered him to appear on Tuesday, the 20th; after hearing Johnson the court decreed that Dowden and Johnson should each serve seven (7) days in the Marion County jail for contempt of court and that they pay the cost. There was no appeal from this judgment. The above proceeding seems to be the history back of and preceding the institution of the case before us on this appeal.

On December 23, 1932, three days after the court sentenced Frank Dowden and Kaleb Johnson to jail for indirect criminal contempt of court, the Polk Sanitary Milk Company filed an affidavit and information in the same cause and with the same court and judge charging the appellants herein with a violation of the injunction theretofore issued against Frank Dowden. This information related the issuance of the permanent injunction against Frank Dowden on October 11, 1932, and enumerated the things which the court had enjoined the said Frank Dowden from doing. It also related the violation of the injunction by Dowden and one Kaleb Johnson and that the evidence produced at the hearing established the violation as charged, and that the defendant (Frank Dowden) was duly warned by the court that further violations of said permanent injunction would be punished; that appellants, Russell Moore and Earl Marple, doing business under the business name of Model Milk Company, had actual knowledge and notice of and were fully cognizant of said injunction and of its scope and intended effect and of all the proceed-

ings herein above referred to; that in willful violation of the terms of said injunction and in contempt of and in disregard for said decree of this court, Russell Moore and Earl Marple procured from said Frank Dowden, or from his representative Kaleb Johnson, a list of plaintiff's customers living within the boundaries of said route No. 2, and in collusion, co-operation and confederacy with said Frank Dowden and as a subterfuge from said injunction and colorable avoidance of its terms, and to aid and abet said Frank Dowden in disobeying and rendering the said decree of the court nugatory and ineffectual, in the district and along said route, and to obstruct its enforcement and thwart its purposes, have repeatedly, to-wit: on December 19, 1932, and on each of the four days thereafter, personally delivered on their own account, dairy products to fifteen named persons, all living on route No. 2, all of whom were at all times known to be customers of the plaintiff, and that the selection of persons to whom said deliveries were so made by appellants was solely by means of the list of plaintiff's customers procured by said Moore and Marple from defendant Frank Dowden and in contempt of the decree of this court, and not by any bona fide solicitation made independently of said list nor by any other legitimate means.

Upon the filing of the above information the court issued a citation for appellants to appear in Superior Court, Room No. 5, on January 3rd and show cause why they should not be attached and punished for a contempt of court.

On January 3rd appellants appeared and a hearing was had upon the above information.

The evidence introduced at this hearing was in substance as follows:

The Polk Sanitary Milk Company introduced in evi-

dence its exhibit No. 2, which was the permanent injunction decree above set out.

J. H. Eckert, a witness for the plaintiff, testified that he was salesman and route foreman for the Polk sanitary Milk Company, and had been for twelve years; that he had been in court during all of the proceedings as above mentioned, and that the respondents were in court when the injunction was made permanent and when Frank Dowden and Kaleb Johnson were tried for contempt of court. He stated that at the contempt proceedings against Kaleb Johnson, that he, Johnson, had turned the list of customers of the Polk Sanitary Milk Company over to appellants, as security for the milk that he was buying from them. That Moore and Marple were present when this statement was made and neither of them denied the statement; that starting on the 19th of December, 1932, and continuing until the 3rd day of January, the date of trial, he and Rudolph Dalton made daily inspections of route No. 2, from 4:30 to 7:30 o'clock in the morning and while making these inspections they saw appellants make deliveries of milk to some ten or twelve different addresses, naming them, on route No. 2, and that they were formerly customers of the Polk Sanitary Milk Company; that Marple and Moore were on the route together some mornings and other mornings only one of them was on the route; that the witness checked the milk bottles after appellants had made deliveries and he found the milk bottles had caps on them labeled "Model."

Rudolph Dalton, who was with J. H. Eckert on the inspection tours, testified in substance as did Eckert except he did not testify concerning the testimony of Johnson at the contempt proceeding about the list of names Johnson turned over to appellants. His testimony related to what he saw on the different mornings he and Eckert were on route No. 2; that he saw appellants de-

liver milk to certain addresses on the mornings of December 19th to January 3rd, and that former customers of the Polk Sanitary Milk Company lived at these places.

C. J. Reehling testified that he lived at 1908 Broadway; that he was formerly a customer of the Polk Sanitary Milk Company; and that he changed to the Model Milk Company in the summer or fall of 1932; that he was solicited by the driver of the Model Milk Company, but did not give the name of the driver, and when asked if he changed on account of the solicitation he answered "not exactly, no."

Ruth Huffman testified that she lived at 1402 N. Alabama Street and was a customer of Polk Sanitary Milk Company, that she left them last summer and went to the Model Milk Company, and became a customer of the Polk Milk Company again on December 19, 1932.

Beatrice Unrue testified that she lived at 320 East 15th Street; that she quit the Polk Sanitary Milk Company on August 4th and takes milk from the Model Milk Company; does not know the man's name that solicited her. It was not either of appellants nor was it Frank Dowden.

Nora Westfield testified that she lived at 1319 N. New Jersey Street; that she was a former customer of the Polk Sanitary Milk Company; that she quit taking milk from them in the summer of 1932; that she was not solicited, but quit voluntarily; took of the Model Milk Company until about a week and a half ago.

This was all the evidence introduced by the Polk Sanitary Milk Company.

Russell Moore, one of the appellants, testified that he is one of the interested parties in the Model Milk Company. That on December 20, at the time of the hearing of Kaleb Johnson for contempt, Mr. Piggs, auditor of

the Polk Milk Company at the direction of the court gave us a list of the customers of the Polk Sanitary Milk Company that was served by Dowden when he worked for it, and said that those were the names of the customers that we were not allowed to serve; that he did not serve any of those customers since that date, but that four or five of them called the office on the phone, and that the girl at the office took their order and sent milk to them by special delivery, and thereafter they were served by another route for two or three days with the exception of one customer and we quit serving her on the 24th of December, because she insisted on our service; that they did not know that they were serving any of the customers that were on the list given us by Mr. Piggs; that he had received a list of customers served by Kaleb Johnson at the time he started buying milk from us; that they made deliveries to these customers until the 20th of December and to all of them thereafter until the 23rd except those that were on the list given us by Mr. Piggs on the 20th; that at the hearing of Mr. Dowden on the 17th the court said he wanted to hear Johnson on the 20th and ordered us to continue to make delivery as we had been doing until he could hear Johnson, and that they did so, and after the 20th we did not serve any of Polk's customers that were on the list given us by Mr. Piggs, except the four or five who called the office for delivery.

It is clear from the record that J. H. Eckert was confused in his testimony when he testified that Johnson, at his hearing on January 20th, said on the witness stand that he (Johnson) turned over to Moore and Marple a list of customers of the Polk Sanitary Milk Company and assigned them to Moore and Marple as security for milk he was purchasing from them. A reading of the evidence from the record given at the hearing of Johnson held on the 20th discloses that what John-

son did testify was that when he started on the route after Dowden quit on September the 2nd he made a list himself of the customers he was serving, and this list he assigned to Moore and Marple as security for the milk he purchased. There is no evidence in the entire record that either Dowden or Johnson ever assigned or ever had a list of customers of the Polk Sanitary Milk Company or that any such list was ever in the hands of Moore and Marple except the list made out by Mr. Piggs and delivered by him to Moore and Marple on December 20, and at the direction of the court. This is in accord with the evidence given by both Moore and Marple at their hearing.

Earl Marple testified in substance the same as Mr. Moore and we need not repeat his evidence.

This was all the evidence and after the close of the evidence on the 11th day of January the court found both appellants guilty of contempt and decreed that each pay a fine of $200.00, which should be for the benefit of the Polk Sanitary Milk Company, and that they pay the cost. It is from this judgment appellants appeal.

One of appellants' assignment of error is that the court erred in overruling the motion for a new trial. One of the reasons for a new trial is that the decision of the court is not sustained by sufficient evidence and is contrary to law.

In view of the conclusion we have reached it will be unnecessary for us to consider any other assigned error.

We have reviewed carefully the evidence given in this hearing as well as the evidence given in the other proceedings, and find no evidence whatever that Frank Dowden did on the 19th of December or thereafter violate the injunction issued against him on October 11, 1932. Not a single act on his part is mentioned in the evidence adduced at the hearing. No

one testified that Frank Dowden delivered any dairy products to anyone after October 11, 1932, nor did he solicit anyone either directly or indirectly after that time; nor did he in any way or in any manner divert or attempt to divert or in any manner take away the customers or business of the Polk Sanitary Milk Company.

The only contention made by appellee in this connection is based upon the testimony of J. H. Eckert that Johnson assigned a list of customers of the Polk Sanitary Milk Company to appellants about the second or third of September, to secure the payment of milk. But no such evidence was given at the trial of Dowden or Johnson. The list of names assigned to appellants was a list of names made by Johnson himself. There is no evidence that appellants at the time had any knowledge that it contained the names of any of appellee's customers, and had they known that some of the customers of the Polk Sanitary Milk Company appeared on that list, we are totally unable to see how that fact would subject them to a contempt proceeding, or would in any manner be a violation of the injunction issued against Dowden.

Appellants were engaged in the business of distributing milk in the City of Indianapolis, and was in competition with the Polk Sanitary Milk Company. They had a perfect right to solicit business from their competitor's customers, so long as they did not violate the injunction. It must be kept in mind that appellants are not a party to the injunction. The injunction was issued against Frank Dowden and appellants are charged only as aiding, conspiring, and abetting Dowden to violate the injunction. There is no evidence that can reasonably be construed to support this charge. The fact that appellants on December 19th and for three or four days thereafter delivered milk to persons living within what was known as Route No. 2, of the Polk Sanitary Milk

Company, does not prove or tend to prove that appellants aided or abetted or conspired with Frank Dowden to violate the court's injunction. The evidence does not show that appellants ever saw Frank Dowden or had any conversation with him or anyone who represented him during the time here in question.

We are of the opinion that there was no evidence to support the decision of the trial court, and that the court should have granted appellants' motion for a new trial.

As to the question raised by appellants that they could not be held for contempt for the reason that they were not a party to the injunction suit, we think it sufficient to say that they are charged here only as aiding and abetting Frank Dowden, and that there is a total absence of evidence that Frank Dowden on the 19th of December or thereafter violated the injunction against him or that appellants in any manner conspired with Dowden or aided or abetted him, in disobeying the injunction.

It will be noted that the information herein contains no allegations as to damages suffered by the Polk Sanitary Milk Company by reason of the wrongful acts of appellants. Nor was there any evidence introduced at the hearing upon that subject. The judgment ordered appellants to pay to the clerk of the court four hundred dollars, for the use and benefit of the Polk Sanitary Milk Company.

If we consider the proceedings herein as an indirect civil contempt as appellee contends, then the amount of the fine assessed should be fixed upon a compensatory basis and not arbitrarily fixed by the court. It is said in 13 C. J., p. 89, Sec. 137:

"A compensatory fine cannot be imposed where no injury has been inflicted. In determining the measure of indemnity, the extent of injury and proper redress to those whose rights have been impaired or delayed will be considered. The amount

of the indemnity, however, does not lie in the discretion of the court, but the loss must be established by satisfactory evidence."

For the reasons herein set out the judgment is reversed with instructions to the trial court to sustain appellants' motion for a new trial.

Judgment reversed.