NATIONAL EDUCATION ASSOCIATION—SOUTH BEND and Indiana State Teachers Association, Appellants–Defendants,

v.

The SOUTH BEND COMMUNITY SCHOOL CORPORATION, Appellee–Plaintiff.

No. 71A05–9409–CV–368.

Court of Appeals of Indiana.

Aug. 31, 1995.

Richard J. Darko, J. Michael Cavosie, Mary Jane LaPointe, Lowe Gray Steele & Hoffman, Indianapolis, Chuck Leone, John Stoddard, Botkin Leone & Eslinger, South Bend, for appellants.

Baker & Daniels, Thomas J. Brunner, Jr., Paul J. Peralta, Kari A. Gallagher, South Bend, for appellee.

Lisa F. Tanselle, Indianapolis, for amicus curiae.

### OPINION

BARTEAU, Judge.

The National Education Association— South Bend ("NEA–SB") and the Indiana State Teachers Association ("ISTA") (collectively referred to as "Unions") appeal the trial court's judgment denying Unions's motion to vacate or reduce contempt fines awarded to South Bend Community School Corporation ("School Corporation"). Unions raise five issues which we state as the following four:

1. Whether the underlying lawsuit was filed in violation of Indiana's Open Door Law, depriving the trial court of jurisdiction to issue indirect civil contempt fines;

2. Whether in direct civil contempt fines should be vacated because Unions were not given sufficient notice of the alleged contemptuous acts or sufficient time to prepare for the contempt hearing;

3. Whether School Corporation failed to bargain in good faith and thus was not entitled to seek equitable relief;

4. Whether the evidence supports the amount of the fines imposed.

We affirm.

### FACTS

In November of 1993, contract negotiations between School Corporation and NEA–SB, the union representing School Corporation teachers, broke down. On February 17, 1994, the teachers elected to strike in violation of Indiana law. There is no dispute that Unions actively assisted the teachers in reaching the decision to strike. School Corporation filed a verified complaint for temporary restraining order ("TRO"), temporary in junction, and permanent in junction on February 18, 1994, to enjoin Unions and teachers from engaging in a strike. After a hearing on February 22, the trial court issued a TRO, enjoining Unions and teachers from "participating in, assisting in, and aiding or abetting any strike. . . ." R. 32.

On Thursday, February 24, the teachers went on strike and following an on-the-record telephone conference with counsel for School Corporation and Unions, the trial court entered an order setting a contempt hearing for Saturday, February 26. This order referred only to the teachers, so on Friday, February 25, School Corporation filed a motion for rule to show cause directed at Unions as well as teachers. Also on Friday, Unions filed a motion for continuance of the contempt hearing, seeking a one week continuance. At the Saturday hearing, Unions requested a two-day continuance. The trial court granted the motion for continuance, but gave Unions only a one-day continuance. School Corporation also agreed that it was seeking a contempt finding against only Unions, and not the individual teachers. The court entered a show cause order which stated:

> In open court, the Defendants NEA–South Bend and ISTA are notified that they must return to court on Sunday, February 27, 1994 at 4:00 p.m. to show cause why they should not be punished for contempt of court for disobeying and disregarding the Temporary Restraining Order issued by the court on February 22, 1994. Particularly, Plaintiff alleges that NEA–South Bend and ISTA "actively rallied, encouraged, and continue to coordinate the illegal teachers' strike in defiance of the TRO."

R. 199.

The contempt hearing was held on Sunday, February 27, and Monday, February 28. At the conclusion of the hearing, the trial court found Unions in contempt for violating the TRO and imposed fines of $175,000 against ISTA and $25,000 against NEA–SB. The order provided:

> Said sums are payable to the Plaintiff, South Bend Community School Corporation. The fines are subject to possible

remission on the showing by Defendants NEA-South Bend and ISTA that a good faith effort is made to stop the teacher's (sic) strike and successfully have striking teachers back in their respective classrooms on March 1, 1994.

R. 209. Teachers returned to their classrooms on March 7, 1994. Unions subsequently filed a motion to vacate or reduce contempt fines. This is an interlocutory appeal from the denial of that motion. The application for permanent injunction remains pending.

## *JURISDICTION*

■ Unions first argue that the trial court was without jurisdiction to issue the contempt fines because School Corporation violated the Open Door Law in reaching its decision to file this lawsuit.[1] School Corporation counters that Unions have waived any jurisdictional defect by not raising it in a timely manner.

■ A court exercises three types of jurisdiction in every case: (1) subject matter jurisdiction, (2) jurisdiction of the person, and (3) jurisdiction of the particular case. *Harp v. Indiana Dep't of Highways* (1992), Ind.App., 585 N.E.2d 652, 659. Subject matter jurisdiction is the power of the court to hear and determine the general class of cases to which the particular case belongs. *State ex rel. Hight v. Marion Superior Court* (1989), Ind., 547 N.E.2d 267, 269. The issue of subject matter jurisdiction may be resolved by determining whether the claim involved falls within the general scope of authority conferred on a court by the Indiana Constitution or by statute. *Id.* The absence

of subject matter jurisdiction cannot be waived and renders a judgment void. *Id.* A court can have subject matter jurisdiction of a class of cases and not have jurisdiction of the particular case due to the facts of the particular case. *Harp*, 585 N.E.2d at 659. When a court lacks jurisdiction of the particular case, the judgment is not void but merely voidable, requiring a timely objection to the court's exercise of jurisdiction. *Hight*, 547 N.E.2d at 269; *Harp*, 585 N.E.2d at 659.

Here, there is no dispute that the St. Joseph Superior Court has subject matter jurisdiction over the general class of cases to which this particular case belongs, namely the power to hear and determine a claim for a TRO and injunction. Thus, Unions's attack on the trial court's jurisdiction is an attack on its jurisdiction of this particular case. Consequently, Unions were required to make a timely objection to the trial court's exercise of jurisdiction or they waived the issue. We need not determine whether School Corporation violated the Open Door Law or whether such a violation deprived the trial court of jurisdiction of this particular case because Unions did not make a timely objection.

School Corporation filed its complaint for a TRO and injunction on February 18, 1994. A hearing concerning the TRO was held on February 22. Unions appeared at the hearing and did not object to the trial court's exercise of jurisdiction. Again during the telephone conference held on February 24 concerning the teachers's strike and setting a contempt hearing Unions did not object to the trial court's exercise of jurisdiction. Unions continued to fail to object to the trial court's exercise of jurisdiction at the hearings held on February 26, 27, and 28. Not

1. Interestingly, when Unions raised this issue to the trial court, Unions specifically told the trial court that it was not objecting to the court's jurisdiction to enter a finding of contempt; Unions merely objected to the imposition of fines. R. 1465. These positions are inconsistent. If the trial court did not have jurisdiction because School Corporation violated the Open Door Law, then the trial court did not have jurisdiction to enter the TRO, to make a finding of contempt, or to impose fines. On appeal, Unions argue that the trial court did not have jurisdiction to issue the TRO because School Corporation's complaint was void due to the Open Door Law violation. School Corporation does not discuss the incon-

sistency in Unions's arguments at trial and on appeal. School Corporation limits its argument to whether Unions timely raised the Open Door Law violation as a jurisdictional defect, so that is the issue we address.

Additionally, in their Reply Brief Unions argue that the trial court lacked jurisdiction because School Board impermissibly delegated to its attorneys its authority to make the decision to file a lawsuit. We do not address this issue because (1) Unions may not raise a new issue for the first time in its Reply Brief, and (2) School Board and Unions stipulated below that School Board made the decision. R. 354.

until March 4, 1994 did Unions first raise the issue that School Corporation violated the Open Door Law. In their Brief in Opposition to Preliminary Injunctive Relief, Unions argued that School Corporation was not entitled to equitable relief because violation of the Open Door Law gave School Corporation "unclean hands." At the hearing on the same day, Unions for the first time made the argument that the trial court was without jurisdiction because School Corporation violated the Open Door Law. R. 1364. The argument was not pursued at this hearing. The trial court, not wanting to make a finding on the preliminary injunction request that might undermine the collective bargaining negotiations that were taking place, merely acted upon School Corporation's request to extend the TRO for ten days, in the hope that negotiations would be successful during that time period. Unions did not object to extension of the TRO on the grounds that the trial court was without jurisdiction.

Unions again raised the issue of the trial court's jurisdiction in its Motion to Vacate or Reduce Fines filed on April 13, 1994. At the hearing on the motion, held on May 27, 1994, the issue was fully presented to the trial court for the first time. Unions argued that the issue was not raised before March 4 because Unions's attorneys did not receive the notices of School Corporation's meetings that evidenced the violations until a couple of days before March 4. However, School Corporation, pursuant to the Open Door Law, publicly posted its notice of the executive session it was holding on February 18. The lawsuit was filed on February 18, following the meeting. Unions argue that School Corporation violated the Open Door Law by initiating this lawsuit without properly designating it as a matter to be discussed in an executive session and without voting on the decision to file suit during a public meeting. If School Corporation did violate the Open Door Law, the violation was apparent on February 18 when the lawsuit was filed without notice ever being posted of the matter or a public vote being taken. Unions acknowledged as much at the hearing:

> [Counsel for Unions]: ... The School Board filed suit on February 18th. We

obviously knew a lawsuit was on file that day. We didn't know when they decided to file it, and we didn't know who decided to file it. The only notice that went up on the wall said the School Corporation is going to talk about collective bargaining.

R. 1417. Thus, on February 18 Unions knew that School Corporation filed a lawsuit without specifying in the notice of the executive session that it would be discussing litigation and without making the decision to file suit at a public meeting—the very facts on which Unions base their challenge to the trial court's jurisdiction. Under these facts, March 4, 1994 was not the first opportunity Unions had to challenge the trial court's jurisdiction over this case. Unions had the information necessary to challenge jurisdiction at the first hearing held on February 22. Having failed to do so, Unions waived any challenge that might have been made to the trial court's jurisdiction of this case. The trial court properly exercised jurisdiction over this case.

### DUE PROCESS

Unions next argue that they were denied due process of law because they were not given sufficient time to prepare for the hearing on the rule to show cause. In a related vein, Unions also argue that the rule to show cause violated Indiana Code 34-4-7-8 because it did not set forth specific facts identifying the alleged contempt. A thorough review of the record in this case convinces us that Unions were not denied due process.

Due process requires that a civil contemnor be provided adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Bottoms v. B & M Coal Corp.* (1980), Ind.App., 405 N.E.2d 82, 95, *reh'g denied.* The notice provided must give a defendant an opportunity to make a defense and due process is violated when the notice does not give an attorney adequate time to prepare a defense and test the validity of the charges involved. *City of Mitchell v. Graves* (1993), Ind.App., 612 N.E.2d 149, 152. The denial of a motion for continuance can constitute a denial of due process. *Id.* Ultimately, in determining

whether due process has been provided, courts must "take cognizance of the practicalities and peculiarities of each particular case." *Id.*

█ Here, Unions, School Corporation and the trial court held a hearing by telephone on Thursday, February 24, 1994, the day teachers went on strike in violation of the TRO. The trial court issued an order for a hearing on the alleged contempt with respect to the teachers for Saturday, February 26, at 11:30 a.m. and also issued a "curtesy" order describing the possible penalties faced by the teachers if they continued to strike. School Corporation requested that this "curtesy" order include Unions because they were the "most culpable", but the trial court responded that it could "only deal with teachers today.... I can take all of that up at a hearing, if there's evidence that in fact that's true. I understand your perspective, but I think that's beyond what I anticipate today. My emphasis is going to be getting those teachers back into the classroom." R. 856. Unions's attorney did not object to the hearing being set for Saturday morning.

Because the order issued by the trial court on Thursday was directed at the teachers only, on Friday, School Corporation filed a motion for rule to show cause against all defendants, including Unions. Also on Friday, Unions filed their motion for continuance of the hearing set for Saturday morning. The trial court addressed these new filings at the Saturday morning hearing. School Corporation indicated that it wanted to proceed only against Unions, not the individual teachers. The trial court entered a rule to show cause against Unions and continued the contempt hearing to Sunday, February 27, at 4:00 p.m., granting Unions a one-day continuance. At the Saturday hearing, Unions's attorney argued that a continuance was necessary because the attorneys had only been prepared with respect to the teachers since the motion for rule to show cause was not filed against the Unions until Friday. Unions asked for a forty-eight-hour continuance. The trial court recognized the expertise of the attorneys representing Unions and recognized that Unions knew back on Tuesday, February 22, that School Corporation would seek a rule to show cause against Unions if the TRO was violated. Thus, the trial court was confident that Unions could be prepared for the hearing by Sunday afternoon.

On appeal, Unions argue that it was impossible to prepare a defense in one day for Unions because so much time was wasted originally preparing to defend the approximately 700 individual teachers. The record belies Unions's claim of impossibility. First, this appeal concerns only the due process provided to Unions, not the individual teachers. Thus, we will focus on Unions's ability to prepare their defense, not the teachers's. Second, Unions stipulated that teachers were on strike (R. 908), thus it was not necessary for Unions to investigate and question the 700 individual teachers in an effort to prepare Unions's defense. Third, the transcript of the contempt hearing reveals that Unions's attorneys were prepared to make and did make objections to School Corporation's presentation of evidence and were prepared to and did present witnesses on behalf of Unions. In short, the transcript reveals a thorough presentation of evidence from both sides concerning Unions's alleged violation of the TRO. Further, Unions do not indicate that given more time to prepare, they would have presented different evidence that could have changed the outcome. Unions fail to show that they were not given sufficient time to prepare for the hearing.

█ Unions also argue that they were deprived of due process and that the rule to show cause violated Ind.Code 34–4–7–8 because it did not state the specific facts supporting the alleged contemptuous acts. The rule to show cause states that Unions must show cause "why they should not be punished for contempt of court for disobeying the Temporary Restraining Order issued by the court on February 22, 1994. Particularly, Plaintiff alleges that NEA–South Bend and ISTA 'actively rallied, encouraged, and continue to coordinate the illegal teachers' strike in defiance of the TRO.'" R. 199. At the hearing held on Saturday, February 26, School Corporation specified the actions taken by Unions and Unions's attorney acknowledged that the contemptuous acts had been

sufficiently identified. Unions cannot now complain that insufficient notice of the alleged contemptuous acts was given.

## EQUITABLE RELIEF

Unions argue that the contempt fines should be vacated because School Corporation was not entitled to equitable relief. They argue that School Corporation did not bargain in good faith and thus did not seek equitable relief with "clean hands." However, at the hearing on School Corporation's application for TRO, Unions did not present evidence that School Corporation had unclean hands for failing to bargain in good faith. Thus, the trial court properly rejected Unions's argument that School Corporation was not entitled to equitable relief.

## CONTEMPT FINES

▉ Unions finally argue that the evidence does not support the amount of the fines that were imposed. Specifically, Unions argue that there is no evidence to support the conclusion that the fines were coercive because there is no evidence of the amount needed to coerce Unions into compliance with the TRO.[2] Thus, Unions argue the fines are impermissibly punitive. We are not persuaded by Unions's argument.

▉ A civil contempt, which is at issue here, is a violation of a court order resulting in a proceeding for the benefit of the aggrieved party. *Duemling v. Fort Wayne Community Concerts, Inc.* (1963), 243 Ind. 521, 524, 188 N.E.2d 274, 276. The rights and remedies in a civil contempt case are distinct from the rights and remedies in a criminal contempt case although they may arise from the same acts. *Pickett v. Pelican Service Associates* (1986), Ind.App., 495 N.E.2d 245, 246, *reh'g denied.* The primary objective of a civil contempt proceeding is not to punish the defendant, but to coerce action for the benefit of the aggrieved party. *Duemling,* 243 Ind. at 524, 188 N.E.2d at 276; *Pickett,* 495 N.E.2d at 246. Thus, any type of remedy in a civil contempt proceed-

ing must be coercive or remedial in nature. Any type of fine or imprisonment not for the aggrieved party's benefit must be considered punitive in nature and not properly imposed in a civil contempt proceeding. *Pickett,* 495 N.E.2d at 247.

Here, the trial court specifically stated that the fines of $25,000 against NEA–SB and $175,000 against ISTA were imposed to coerce Unions to comply with the TRO. The fines were subject to remission if Unions complied with the TRO prohibiting any action in furtherance of a strike by making a good faith effort to stop the teachers's strike. Unions suggest that the fines were punitive because the injunction *prohibited* certain conduct rather than mandated an affirmative act. It has been suggested that there is a "possible dichotomy 'between refusing to do an act commanded,—remedied by imprisonment until the party performs the required act; and doing an act forbidden,—punished by imprisonment for a definite term.' " *International Union, UMWA v. Bagwell* (1994), —— U.S. ——, ——, 114 S.Ct. 2552, 2561, 129 L.Ed.2d 642 (quoting *Gompers v. Buck's Stove & Range Co.* (1911), 221 U.S. 418, 443, 31 S.Ct. 492, 498, 55 L.Ed. 797). However,

> the distinction between coercion of affirmative acts and punishment of prohibited conduct is difficult to apply when conduct that can recur is involved, or when an injunction contains both mandatory and prohibitory provisions. Moreover, in borderline cases injunctive provisions containing essentially the same command can be phrased either in mandatory or prohibitory terms.

*Bagwell,* —— U.S. at ——, 114 S.Ct. at 2561. In such cases, the Supreme Court rejected the distinction between coercion of affirmative acts and punishment of prohibited conduct as a test for determining whether the fines imposed were punitive or coercive. *Id.* at ——, 114 S.Ct. at 2561. We find this reasoning compelling and likewise reject the distinction as inapplicable in the case before

---

**2.** Unions also argue that the evidence does not support imposition of the fines as compensatory damages. School Corporation does not argue that the fines were compensatory and because

we determine that the fines were properly imposed as a coercive measure, we do not address Unions's argument regarding compensatory damages.

us. The TRO did not merely prohibit Unions from engaging in one discrete act. It prohibited Unions from aiding or abetting in a strike, or conversely, mandated Unions to make a good faith effort to prevent a strike. In addition, recurring conduct was involved in the violation of the TRO for which Unions could be coerced to cease during the time the TRO was in effect.

If Unions were not afforded an opportunity to reduce or avoid the fines through compliance, we would find that the fines were punitive in nature and not permissible in this civil contempt proceeding. "When a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Bagwell*, —— U.S. at ——, 114 S.Ct. at 2558. Because the trial court gave Unions an opportunity to purge, the fines operated as "a coercive imposition upon the defendant union to compel obedience with the court's outstanding order." *United States v. United Mine Workers of America* (1947), 330 U.S. 258, 307, 67 S.Ct. 677, 703, 91 L.Ed. 884.

 Further, the evidence is sufficient to support the amount of the fines. School Corporation introduced evidence of the Unions's incomes and some of their expenses. NEA–SB brought in about $56,000 per year in dues and ISTA received about $12.6 million per year in dues. The court also heard evidence on the resources available to Unions to meet the expenses of the strike. There is no evidence that Unions were not financially able to pay the fines. Contrary to Unions's suggestion, it does not follow that the evidence does not support the coercive nature of the fines merely because the fines ultimately failed to coerce Unions into compliance. The evidence supports the imposition of fines in the amount of $25,000 against NEA–SB and $175,000 against ISTA.

### CONCLUSION

The trial court had jurisdiction to issue the TRO and to find Unions in contempt for violating the TRO. Further, the Unions were given sufficient notice of and opportunity to defend the rule to show cause and the trial court did not abuse its discretion in imposing coercive fines as a result of Unions's violation of the TRO. Consequently, the trial court did not err in denying Unions's motion to vacate or reduce fines.

AFFIRMED.

RUCKER and CHEZEM, JJ., concur