Shirley EVANS, Appellant–Petitioner,

v.

James EVANS, Appellee–Respondent.

No. 32A01–0104–CV–152.

Court of Appeals of Indiana.

April 30, 2002.

Paul A. Hadley, Matthew A. Burkert, Danville, IN, Attorneys for Appellant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Shirley Evans ("Evans") appeals from the trial court's order finding her in contempt of court for her failure to comply with a provision in an agreed modification of her dissolution decree. Evans presents the following consolidated and restated issues for our review:

1. Whether the trial court abused its discretion when it found her in indirect contempt of the court's modified dissolution decree.

2. Whether the trial court erred when it ordered her to pay $52,000 in damages to James Evans ("James").

We affirm in part, reverse in part, and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

In April 1995, Evans discovered what she believed were pornographic photographs of children belonging to her husband, James. In June 1995, Evans and James filed a joint petition for dissolution of marriage. Evans believed that both she and James were under investigation by the Hendricks County Prosecutor's office for having possession of the photographs, and she consulted her attorney concerning the photographs. Evans retained possession of the photographs from 1995 to 1999. The photographs were a point of contention between the parties at the time of the dissolution in 1995 and thereafter.

In October 1999, Evans and James entered into an "Agreed Modification of Decree of Dissolution." A provision of the modified decree required Evans to "destroy the property, namely photographs which are not hers, that have been in question during the negotiation of these terms. [Evans] agrees to destroy said property by fire." Without inquiring into the nature of the photographs, the trial court approved the agreed modification.

In May 2000, Steve Steinway, a friend of Evans', informed Indiana State Police Officer Jeffrey Hearon about the photographs. Officer Hearon initiated a criminal investigation in conjunction with the investigation underway by the Hendricks County Prosecutor's office. According to Officer Hearon's testimony at the contempt hearing, the photographs numbered approximately 400, but only some depicted children in a manner that would fit the statutory definition of child pornography.[1] Officer Hearon suspected that some of the photographs depicted students at the high school where James was employed, so he asked the school's Superintendent to inspect the photographs in an attempt to identify the subjects and assess their ages. While the Superintendent and other school officials were able to identify some of the students, they were only able to identify those who were fully clothed. After an expert was unable to determine the ages of the other children photographed to a reasonable certainty, Officer Hearon suspended his investigation, and the Hendricks County Prosecutor decided not to file charges against James. Subsequently, the Brownsburg School Corporation terminated James' employment.

James filed a Motion for Rule to Show Cause in which he alleged that Evans should be found in contempt of the court's order on the agreed modification for hav-

---

1. Indiana Code Section 35–42–4–4 provides in relevant part that photographs depicting the exposed genitalia of a child under the age of eighteen constitute child pornography. Some of the disputed photographs fit this category, but others depicted only children's covered genitalia.

ing not destroyed the photographs. After a hearing, the court found Evans in contempt for having failed to comply with that provision of the modified dissolution decree. The court ordered her to pay James an amount equal to one year of his salary with the Brownsburg School Corporation, or $52,000, and James' attorney fees.

## DISCUSSION AND DECISION

■ James has filed no appellee's brief in this case. Where the appellee fails to file a brief on appeal, we may in our discretion reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. *Hubbard v. Hubbard,* 690 N.E.2d 1219, 1220 (Ind.Ct.App. 1998). This rule was established for our protection so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Id.*

### Issue One: Contempt

Evans contends that the trial court erred when it found her in contempt for her failure to destroy the photographs as required by a provision in the modified decree. She maintains that provision was void *ab initio.* Specifically, Evans argues that because she and James were under investigation at the time of the agreed modification, the provision would require her to violate the obstruction of justice statute, Indiana Code Section 35–44–3–4(a)(3).[2]

■ Whether a person is in contempt of a court order is a matter left to the trial court's discretion. *Meyer v. Wolvos,* 707 N.E.2d 1029, 1031 (Ind.Ct.App.1999), *trans. denied.* Upon review, we will reverse the trial court's determination only where an abuse of discretion has been shown. *Id.* An abuse of discretion occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

■ Uncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt. *Crowl v. Berryhill,* 678 N.E.2d 828, 830 (Ind.Ct.App.1997). Contempt proceedings are not designed to provide a review of the appropriateness of previous orders. *Hartzell v. Norman T.L.,* 629 N.E.2d 1292, 1295 (Ind.Ct.App. 1994). Even if a court's order is erroneous, it must still be obeyed until reversed on appeal. *Crowl,* 678 N.E.2d at 830. A party's remedy for an erroneous order is appeal and disobedience of the order is contempt. *Id.*

Evans and James negotiated and agreed upon the terms of the modified dissolution decree which included a provision requiring her to destroy James' photographs. Evans testified at the contempt hearing that at the time she and James agreed to the modification, she believed the photographs of children were pornographic in nature and that she and James were under possible investigation by the Prosecutor's office for having possession of them.[3] Her

2. Indiana Code Section 35–44–3–4(a)(3) provides that a person who alters, damages, or removes any record, document, or thing, with intent to prevent it from being produced or used as evidence in any official proceeding or investigation commits obstruction of justice, a Class D felony.

3. Indiana Code Section 35–42–4–4(c) provides that a person who knowingly or intentionally possesses a picture, drawing, photograph, negative image, motion picture, videotape, pictorial representation or undeveloped film that depicts or describes sexual conduct by a child who is less than sixteen years of age, or appears to be less than sixteen years of age and that lacks serious literary, artistic, political, or scientific value commits possession of child pornography, a

agreement in the modified dissolution decree to destroy the photographs was, in effect, an unlawful promise to conceal evidence of a possible crime. *See* Restatement (First) of Contracts, § 548(1) ("[a] bargain in which either a promised performance or the consideration for a promise is concealing or compounding a crime or alleged crime is illegal.")

■ However, because Evans brings her appeal from the trial court's contempt order, we do not reach the merits of her claim that the decree's provision requiring her to destroy the photographs was void *ab initio*. *See Crowl*, 678 N.E.2d at 830. In other words, we cannot inquire into the correctness of the trial court's modified decree, as that would be an impermissible collateral attack. *See id.* (refusing to address appellant's claim that order underlying contempt proceeding was void *ab initio* despite constitutional nature of questions raised). Once Evans decided that she did not want to abide by the court's order, she should have petitioned the court to modify the decree. The trial court did not abuse its discretion when it found Evans in contempt of court.

■ Moreover, a party may not take advantage of an error which she com-

mits, invites, or which is the natural consequence of her own neglect or misconduct. *Id.* Invited error is not subject to review by this court. *Id.* In this case, Evans agreed to destroy the photographs, which she knew were the subject of an investigation, asked the trial court to approve that agreement, and subsequently refused to obey the court's order.[4] Evans has invited the error of which she now complains, and, therefore, it is not subject to our review.[5]

### Issue Two: Damages

Evans next contends that the trial court erred when it ordered her to pay James $52,000 in damages. Specifically, Evans maintains that the award is punitive, which is impermissible as a matter of law. Evans also asserts that the award was speculative and not supported by the evidence.

■ A court's inherent civil contempt powers are both coercive and remedial in nature. *Meyer*, 707 N.E.2d at 1031. Civil contempts may seek to coerce behavior and to compensate an aggrieved party when a court order is violated. *Id.* A civil contempt is not an offense against the dignity of the court, but is for the benefit of a party damaged by the failure of anoth-

---

Class A misdemeanor. Nevertheless, because the photographs are not part of the record on appeal, we do not express an opinion as to whether they are pornographic.

4. Evans contends, in the alternative, that her failure to destroy the photographs is excused because she subsequently gave the photographs to a third party who, in turn, gave the photographs to Officer Hearon, making it impossible for Evans to destroy them. The fact that she willfully surrendered the photographs to a third person despite the decree defeats this contention. Likewise, Evans has not demonstrated that her disobedience of the court's order was not willful. Indeed, she testified that she knew she "could be in contempt" of the court's order.

5. In asking the trial court to approve their modified dissolution decree, Evans and James neither identified the subject matter of the photographs nor informed the court that the photographs were evidence of a possible crime. Had the original trial court been fully advised, we are confident that the court would not have approved the provision requiring Evans to destroy the photographs. In withholding this pertinent information, Evans and James made the court an unwitting accomplice to an unlawful agreement. We strongly disapprove of the parties' use of the judiciary to thwart the administration of justice in this manner.

er to comply with a court order issued for the benefit of the aggrieved party. *Id.* Compensatory damages cannot be imposed where no injury has been inflicted. *Moore v. Polk Sanitary Milk, Co.,* 209 Ind. 558, 200 N.E. 228, 233 (1936). In determining the measure of damages, the extent of injury and proper redress to those whose rights have been impaired or delayed will be considered. *Id.* The amount of damages, however, does not lie in the discretion of the court, but the loss must be established by satisfactory evidence. *Id.*

■ We agree with Evans that there is insufficient evidence in the record to quantify James' actual loss of income. We find no evidence regarding the length of time that James was unemployed following his termination from the high school. However, at the time of the contempt hearing, James testified that he was earning $420 per month teaching a class at Vincennes University, and he had been hired to teach a class at Community College of Indiana, for which he would be paid $1,680 for the Spring 2001 semester. In addition, he was receiving unemployment compensation in the amount of $280 per week.[6] We conclude that the $52,000 award is not supported by the evidence.

■■ Like the trial court, we are not impressed with Evans' explanations and excuses. However, the primary objective of a civil contempt proceeding is not to punish the contemnor, but, as we have already noted, to coerce action or to compensate the aggrieved party. *See National Educ. Ass'n—South Bend v. South Bend Comm. School Corp.,* 655 N.E.2d 516, 522 (Ind.Ct.App.1995). Thus, punitive damages are not properly imposed in a civil contempt proceeding. *See id.* It follows that the damages award in this case must reflect James' actual damages[7] sustained as a result of Evans' contempt of the modified dissolution decree.[8] Therefore, we reverse the trial court's $52,000 award and remand to the court for a hearing to determine the extent of James' actual damages, if any, resulting from Evans' contempt.

Affirmed in part, reversed in part, and remanded with instructions.

MATTINGLY–MAY, J., concurs.

BAKER, J., concurs with separate opinion.

BAKER, Judge, concurring.

I concur with the majority that the trial court did not abuse its discretion when it found Evans in contempt and that the evidence was insufficient to support the

---

6. We note that in recalculating both parties' child support obligations, which was also at issue during the hearing on James' motion to show cause, the trial court found that James was voluntarily underemployed. *See* Ind. Child Support Guideline 3(A)(3). Specifically, the trial court found that James' underemployment was "occasioned by his having had the pictures in the first place, and having not taken steps himself to destroy them[.]" As a result, the court imputed a weekly income of $1,000 to James when it recalculated his child support obligation. But it is incongruous to hold both that James was voluntarily underemployed and entitled to damages for his underemployment. There may well be a mitigation of damages issue here on remand.

7. Black's Law Dictionary defines "actual damages" as follows: "An amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." BLACK'S LAW DICTIONARY 394 (7th ed.1999).

8. The trial court determined that coercion was not a possible remedy in this case because the disputed photographs are currently in the possession of an Administrative Law Judge, who is presiding over a case regarding whether James is entitled to unemployment benefits.

money judgment. However, I write separately to address Evans's contention that the "Agreed Modification of Decree of Dissolution" executed by the parties was void *ab initio* and contrary to law because her compliance with the order would violate the obstruction of justice statute.

The statute at issue here provides that it is a class A misdemeanor to possess child pornography. I.C. § 35–42–4–4. The record shows that Evans believed that she and James were under investigation by the county prosecutor with regard to their possession of the photographs. In accordance with the statute of limitations, IND. CODE § 35–41–4–2, the State had two years in which to prosecute James for possessing the photographs, assuming they constituted pornographic material under the definition set forth in IND. CODE § 35–42–4–4. *See* Op. at 1243, n. 3.

The statute of limitations provides in relevant part as follows:

(a) Except as otherwise provided in this section, a prosecution for an offense is barred unless it is commenced:

(1) within five (5) years after the commission of a Class B, Class C, or Class D felony; or (2) within two (2) years after the commission of a misdemeanor.

I.C. § 35–41–4–2.

Here, Evans first discovered the alleged pornography in April 1995, took possession of the photographs, and retained them until May 2000. The Agreed Order became effective in 1999. Inasmuch as James was no longer in possession of the photographs sometime during 1995, our statute of limitations effectively prevented the State from prosecuting James for this offense after two years. Therefore, I would hold that the provision in the agreed modifica-

tion agreement directing Evans to destroy the photographs was not void *ab initio.*

Additionally, I would note that rather than destroying the photos or turning them over to the State Police prior to May 2000, Evans chose to retain them for almost five years. The majority acknowledges that the photographs were a "point of contention between the parties at the time of the dissolution in 1995 and thereafter." Op. at 1242. It was pointed out at the contempt hearing that Steinway—Evans's boyfriend—informed the State police of the photographs only four days after Evans had lost custody of the parties' minor daughter and was ordered to pay child support. Tr. p. 81.

Under these circumstances, it is apparent from the record that the motivating factors justifying Evans's retention of the photographs, along with her subsequent decision to deposit them with the State Police years after the statute of limitations had expired as to James, were spite and vindictiveness. It was certainly reasonable for the trial court to infer from the evidence presented at the contempt hearing that Evans consistently used the photographs as a leverage technique when matters arose involving support and custody issues with regard to their daughter. Put another way, the record supports a conclusion that it was much more than Evans's purported belief that she might be hindering a criminal investigation or obstructing justice if she destroyed the photographs.

As an aside, it is also apparent to me that if Evans reasonably believed that she was being investigated by the police for her involvement in the offense, her compliance with the agreed order to destroy the materials might well have amounted to an abandonment of the offense in accordance with Ind.Code section 35–41–3–10.[9] As

---

**9.** This defense is available for those offenses involving aiding or inducing, attempts and conspiracies. I.C. § 35–41–3–10.

our supreme court observed in *Norton v. State*, 273 Ind. 635, 408 N.E.2d 514, 535–36 (1980), the abandonment defense is available to one who, through his own actions, withdraws aid and encouragement and wholly and effectively detaches from the criminal enterprise. Thus, had Evans destroyed the photographs in accordance with the agreed order, she may not have faced any fear of prosecution for her involvement in the offense. And clearly she could not have been prosecuted two years after the destruction of the materials as discussed above. This is yet another reason for my view that the agreed modification was not void *ab initio*. For these reasons, I concur.