Larry MARTIN, Appellant–Respondent,

v.

Judy MARTIN, Appellee–Petitioner.

No. 23A05–0111–CV–516.

Court of Appeals of Indiana.

July 2, 2002.

Richard L. Rennick, Jr., Wallace Law Firm, Covington, IN, Attorney for Appellant.

Jason W. Bennett, James A. Gothard, Bennett, Boehning & Clary, Lafayette, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Larry Martin ("Husband") appeals the trial court's order finding him in contempt of its orders and awarding monetary damages to Judy Martin ("Wife"). We affirm.

### Issues

We restate the issues before us as:

I. whether the trial court erred in finding Husband in contempt; and

II. whether the trial court erred in calculating the damages awarded to Wife.

### Facts

Husband and Wife were divorced on June 5, 2001. As part of the division of the couple's property, the trial court awarded Wife a trucking business, known as Martin Trucking, for which she had performed bookkeeping services and which was valued at $499,000, less debts of $155,000. The dissolution decree stated in relevant part:

> [T]he Wife is awarded the following marital assets: ... the trucking operation, including all trucks and equipment,

subject to the debts thereon. . . . Each party shall execute any and all instruments necessary to effect the division of assets herein ordered. . . .

App. pp. 11–12. The decree provided Wife with sixty days to vacate the marital residence that was awarded to Husband, and Husband was allowed sixty days to arrange for a parcel of real estate awarded to Wife to be released from a mortgage lien. The decree contained no such time-delayed provision with respect to the trucking business. Nevertheless, it is undisputed that Husband continued to operate Martin Trucking for at least two months after the dissolution decree, utilizing its assets and paying drivers' wages and other expenses out of the business checking account. He also proposed to Wife, through counsel, that he continue to run Martin Trucking until August 5, 2001, and to "transfer" the business at that time. In June, Husband and his son, Matt Martin, incorporated a new trucking business, L & M Trucking. Husband transferred several Interstate Commerce Commission ("ICC") identification numbers necessary for operating tractor-trailers from Martin Trucking to L & M Trucking.

On July 5, 2001, Wife filed a Motion to Correct Error, alleging that the marital property division was inequitable because the $499,000 valuation of Martin Trucking was based in large part on income derived from oral lease agreements between Husband and his customers that Wife could not enforce, and on Husband's relationships with the drivers and customers of the business generally. The motion also alleged that Husband had assured his drivers that he was starting a new trucking business, beginning August 6, 2001. On July 6, 2001, the trial court, acting ex parte, modified the dissolution decree as follows:

The Husband is PROHIBITED from entering into any trucking business in Fountain County, or in any adjoining county for a period of five years following this Decree, either in person, or in a partnership or corporation in competition with the trucking business of the parties, and he is further ORDERED not to interfere in any way with, or do anything relating to any present customer, driver, etc. of the trucking business owned by the parties and awarded herein to the Wife, which would adversely affect Wife's ability to maintain said trucking business as a going business.

App. p. 16. Husband did not appeal from or in any way challenge this order or the original dissolution decree, except for requesting that he be permitted to continue operating trucks as part of his farming business. The trial court granted this request. After receiving notice of this modification, Husband severed official ties with L & M Trucking.

On August 9, 2001, Wife filed a petition alleging Husband was in contempt of the trial court's original dissolution decree and its subsequent modification because he was continuing to operate Martin Trucking and had not turned over necessary records and other documentation to Wife. After conducting a hearing, the trial court found Husband in contempt, stating in part:

I don't know where anybody got the idea that there was a sixty day period. There was of course a sixty day period involved [sic] the house. I set that out specifically. There was a sixty day period to arrange financing on transferring part of the real estate because it was part of the joint debt on other real estate. I did that as a convenience to the parties. . . . I mean, that's ridiculous, that the parties can decide when these properties are going to be transferred. The property was transferred the date

of the decree, period.... So, and whether somebody had to operate the business or not wasn't, that was Mrs. Martin's problem, not Mr. Martin's, but he continued to operate the business, paid his son large amounts of money out of this business, paid himself large amounts of money out of the business, paid a lot of drivers out of the business, and a lot of those payments were made after I specifically entered an order that he was to have nothing more to do with trucking, period, except for his farm operation.

Tr. pp. 122–24. The trial court assessed damages as follows: $45,500 for sums paid to Husband's son's trucking business; $20,000 Husband paid to himself as "salary"; $1000 for Husband removing tires from Martin Trucking vehicles, transferring them to L & M Trucking vehicles, and replacing them with inferior tires; $2000 for selling license plates from Martin Trucking vehicles to L & M Trucking; $1500 for transferring ICC numbers to L & M Trucking; $22,000 representing "unjust enrichment," which figure was arrived at by subtracting legitimate Martin Trucking expenses from Martin Trucking income for the period after the divorce was final; and $28,000 for a payment to a diesel fuel supplier made at the end of August 2001. The total damages award was $120,000, plus $5,000 in attorney fees. Husband now appeals.

## Analysis

### I. Propriety of Contempt Finding

■ Husband first argues that there was an insufficient basis to conclude that he engaged in contemptuous conduct. "Contempt is for the benefit of the party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party." *Cowart v. White*, 711 N.E.2d 523, 530 (Ind.1999). Whether a party is in contempt is a matter within the trial court's discretion. *Id.* at 530–31. "We reverse a trial court's finding of contempt only if there is no evidence or inferences drawn therefrom that support it." *Id.* at 531. Contempt may be used to enforce a court's decree that a party transfer property to another. *Id.* As with any fact-sensitive issue on appeal, we will neither weigh the evidence nor judge the credibility of witnesses, and will look at the evidence in the light most favorable to the judgment. *See Adkins Investments, Inc. v. Jackson County REMC*, 731 N.E.2d 1024, 1034 (Ind.Ct.App.2000), *trans. denied.*

■ We first observe that to the extent Husband explicitly and impliedly challenges the wisdom or propriety of the original dissolution decree and its later modification, such challenges are inappropriate in the context of a contempt proceeding. Contempt proceedings are not actions designed to correct errors previously made by trial courts, even errors of a constitutional dimension. *Clark v. Atkins*, 489 N.E.2d 90, 96 (Ind.Ct.App.1986). Collateral attack of a previous order is allowed in a contempt proceeding only if the trial court lacked subject matter or personal jurisdiction to enter the order. *Id.* There is no such claim in this case. Even an erroneous order must be obeyed unless and until reversed on appeal. *Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind.Ct.App.1997). A party's remedy for an erroneous order is appeal; disobedience of the order is contempt. *Id.* Husband never appealed the orders at issue and, therefore, cannot challenge them now.

Husband posits that if he had not continued to operate Martin Trucking after the date of the dissolution decree and its modification, he "would have destroyed Martin Trucking as a going business and it would

also seem to have been in violation of the Court's order." Reply Br. p. 3. Husband claims, therefore, that it is unjust to hold him in contempt for continuing to operate the business because not doing so also might have caused him to be held in contempt. Husband's argument, however, views the evidence in the light most favorable to him, not to Wife. It necessarily assumes the evidence demonstrates he altruistically had the best interests of Martin Trucking and Wife in mind by his continued operation of the business, when in fact the record contains evidence and inferences clearly to the contrary.

■ Specifically, the record supports the conclusion that Husband's continued operation of Martin Trucking was designed to foster a smooth transition of that business' clients and drivers to a newly-formed corporation, L & M Trucking, that would have effectively put Martin Trucking out of business, thus depriving Wife of almost its entire value. Husband and his son formed L & M Trucking shortly after the divorce; he transferred ICC numbers and tires from Martin Trucking vehicles to L & M Trucking vehicles. Wife testified that she spoke to some Martin Trucking drivers after the divorce, who apparently indicated that they were unwilling to work for her, thus obviously impeding her ability to run the business; Husband apparently had something to do with this unwillingness.[1] Many of these drivers ended up working for L & M Trucking. It is also interesting to note that, although Husband allegedly severed all ties with L & M Trucking after the trial court entered its

non-compete modification of the dissolution decree, at least three of L & M Trucking's clients were former clients of Martin Trucking, practically depriving Martin Trucking of its entire client base.[2] Husband paid $45,500 to his son from Martin Trucking's account after the divorce, allegedly for services provided by the son's sole proprietorship trucking business. However, no documentation supported the claim that these payments were for legitimate services; Wife, who did bookkeeping for Martin Trucking prior to the divorce, testified that there was never an occasion on which payments were made to the son without first receiving invoices and bills. She also testified that she did not believe Matt Martin was being truthful as to what he was legitimately owed. It is reasonable to infer from this evidence that Husband's intention in continuing to operate Martin Trucking was to maintain his own personal goodwill with its drivers, customers, and suppliers, and to provide indirect financial support to L & M Trucking, for the purpose of fostering the growth of that corporation at the expense of Martin Trucking.

■ Husband also contends that the trial court's orders were so vague and ambiguous with respect to Martin Trucking that he could not be held in contempt for allegedly violating those orders. A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. *Burrell v. Lewis,* 743 N.E.2d 1207, 1213 (Ind.Ct.App.2001). We conclude, however, that whatever the practical considerations of how to implement

---

1. Wife testified as follows: "I talked to his drivers. Larry had told them .... I didn't have any drivers." Tr. p. 91.

2. The record contains letters from Husband's counsel to three customers of Martin Trucking dated July 17, 2001, informing the customers that Wife was awarded the trucking business and that it would be transferred to

her on August 5, 2001. These three businesses became customers of L & M Trucking. Additionally, Wife testified that a contact person at one of those businesses told her he was informed that Martin Trucking "was no longer going to be, that it was going to be L & M Martin Trucking Inc." Tr. p. 102.

Wife's full takeover of Martin Trucking, it was abundantly clear from the dissolution decree that the business was not Husband's to operate after the date of the decree, June 5, 2001. Husband could not operate it and receive any profits therefrom after that date. He could not transfer the ICC numbers and tires on the trucks to another business. He certainly could not siphon funds from the business into his son's trucking business. Furthermore, Husband's transfer of the ICC numbers hindered Wife's ability to operate the business, as did his failure to turn over all necessary and relevant business records to Wife. She was not required to request these records from him; he was required to present them to her by operation of the dissolution decree, instead of proposing to transfer the business sixty days after the dissolution decree, where such delay was not provided for in the decree.

Finally, we note that our supreme court held when considering a divorce decree requiring the sale of property and division of the proceeds that the decree implied an obligation not to devalue the property, and thus "the terms of the decree included taking reasonable steps to preserve the value of the property to adequately compensate both parties, *and certainly precluded willful acts to devalue the property.*" *Cowart,* 711 N.E.2d at 532 (emphasis added). The same is true here: Wife was awarded Martin Trucking based on its value of approximately $500,000 less debts of $155,000, which value was based in large part on its ability to generate income. Husband's undertaking to deprive the business of that ability through the various means we have described justified the trial court's finding that he was in contempt of not only the non-compete modification to the divorce decree, but also the original decree awarding Wife the "trucking operation," which clearly refers to much more than the physical assets of the operation.

The trial court did not abuse its discretion in concluding Husband willfully violated its orders with respect to the award of Martin Trucking to Wife.

## II. Amount of Damages

■■■■ On appeal, Husband does not in any way challenge the imposition of damages in the amount of $20,000 for payments Husband made to himself, $2000 for the selling of Martin Trucking license plates to L & M Trucking, and $1000 for the removal of tires from Martin Trucking vehicles. He additionally does not challenge the amount of the attorney fees award. As for the remaining $97,000 in damages, it is true that the amount of damages awarded must be supported by substantial evidence. *Hancz v. City of South Bend,* 691 N.E.2d 1322, 1326 (Ind. Ct.App.1998). It is also a cardinal rule of appellate review, however, that appellants have the burden of showing reversible error by the record, "as all presumptions are in favor of the judgments and rulings of the trial court." *City of Fort Wayne v. Bishop,* 228 Ind. 304, 315, 92 N.E.2d 544, 548 (1950). We conclude Husband has not met his burden to demonstrate reversible error by the trial court.

■■ Husband's argument that the trial court improperly assessed damages against him in the amount of $45,500, for payments made to his son's sole proprietorship trucking business, is simply an invitation for us to reweigh the evidence and judge witness credibility, which we cannot do. The trial court concluded that these payments were not legitimate expenses of Martin Trucking. There was no written documentation to support Husband's claim that these were legitimate expenses, and his and his son's testimony that there never was any such documentation as a customary business practice conflicts with Wife's testimony on the subject.

Wife also doubted the veracity of the son's testimony on the legitimacy of this claimed expense. The trial court was within its discretion to do likewise; there was substantial evidence to support the award to Wife of $45,500.

Husband also claims there is no basis in the record for concluding Wife was damaged in the amount of $1500 because of Husband's transfer of ICC authority numbers from Martin Trucking to L & M Trucking. Although there is no documentary basis for this particular damages award, the inconvenience and frustration suffered by the aggrieved party may be taken into account in determining the appropriate amount of damages in a civil contempt proceeding. *Cowart*, 711 N.E.2d at 532. Husband claims these ICC numbers were personal to him and could not be transferred for Wife to use to operate Martin Trucking; he explained that he was able to transfer the numbers to L & M Trucking because he was the majority shareholder of that corporation at the time of the transfer. Even assuming that was true, however, he permitted L & M Trucking to continue using the ICC numbers after the trial court's explicit non-compete order and after he divested himself of any interest in that corporation. This facilitated the transfer of Martin Trucking business to L & M Trucking to Wife's detriment. The trial court did not err in assessing damages in the amount of $1500 for the inconvenience and frustration to Wife caused by the transfer of the ICC numbers.

Next, Husband challenges the trial court's conclusion that following the dissolution decree, Martin Trucking had $258,000 in gross income and $236,000 in legitimate expenses, resulting in $22,000 in unjust enrichment that the court ordered him to pay to Wife. The full extent of Husband's argument on this point is that "[c]ounsel for the husband introduced into evidence a check ledger which showed income and expenses of Martin Trucking and we can only presume that this was used by the Court to justify the twenty-two thousand dollar ($22,000) award but it does not support that amount and nowhere in the record is there anything to substantiate the damage award to said wife." Appellant's Br. pp. 10–11. We agree with Wife that this argument falls short of demonstrating error by the trial court, particularly because the copy of the ledger in question that has been provided to this court is illegible in many parts, primarily on the income side of the ledger. Additionally, we agree that Husband, at the least, was required to propose what a proper calculation of Martin Trucking's income and expenses during the relevant time period should have been. Having failed to do so, "we are unwilling to sift through a record to locate error so as to state an appellant's case for him." *Wright v. Elston*, 701 N.E.2d 1227, 1230 (Ind.Ct. App.1998), *trans. denied.*

Finally, Husband claims the trial court erred in concluding that a $28,000 payment to Westland Co-op, a diesel fuel supplier, in August 2001, was not a legitimate expense of Martin Trucking. He asserts that this payment went toward a reduction of a debt to Westland that was outstanding prior to the date of the dissolution decree. This is one characterization of the evidence before the trial court, but it is not the characterization most favorable to the judgment. Although Wife concedes that there was an outstanding debt to Westland of approximately $89,000 prior to the date she was awarded Martin Trucking, she also introduced evidence that that debt was substantially increased during Husband's operation of the business following the dissolution decree. According to Westland statements, Martin Trucking incurred additional diesel fuel debt in the

amount of $47,140 in June and July 2001, alone. The trial court apparently considered a $40,000 payment to Westland in July 2001, as a legitimate Martin Trucking expense, but excluded the $28,000 payment at the end of August 2001, as a legitimate expense because it was made after Husband claimed he would transfer the business to Wife. The court had a substantial basis for concluding that that payment went toward an "illegitimate" debt incurred after the date of the divorce.

## Conclusion

Looking at the evidence in the light most favorable to the judgment, we conclude the trial court did not abuse its discretion in finding Husband in contempt of its orders awarding Martin Trucking to Wife. Furthermore, Husband has failed to demonstrate that the damages assessed were not supported by substantial evidence. We affirm in all respects.[3]

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

**3.** Wife also requests that we remand to the trial court for an assessment of appellate attorney fees against Husband. Under Indiana Appellate Rule 66(E), we may award damages against an appellant, including attorney fees, if an appeal is frivolous or in bad faith. However, we must use extreme restraint when exercising our discretionary power to award damages on appeal because of the potential chilling effect upon the exercise of the right to appeal. *Montgomery, Zukerman, Davis, Inc. v. Chubb Group of Ins. Companies*, 698 N.E.2d 1251, 1254 (Ind.Ct.App.1998), *trans.*

*denied.* Here, we do agree that Husband has not strictly complied with all of our appellate rules, most notably 46(A)(6)(b), which requires that "the facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed." This is particularly true with respect to the issues of the $45,500 and $28,000 damage awards to Wife. Nevertheless, we cannot say Husband's appeal is so utterly lacking in merit or that his brief so egregiously violates the appellate rules that an award of appellate attorney fees is warranted.