### In the Matter of ANONYMOUS.

### No. 20S00–0205–DI–279.

Supreme Court of Indiana.

April 25, 2003.

PER CURIAM.

In this attorney discipline case, the Disciplinary Commission contends that the respondent lawyer violated the ethical prohi-

bition on *ex parte* communication with a judge when she sought and obtained a temporary restraining order without notice in a marriage dissolution case. While we agree with Respondent that notice is not necessarily required to obtain a temporary restraining order in a domestic relations case, compliance with the trial rules' prerequisites to obtain an order without notice is required, even in domestic relations cases. We also write to detail the lawyer's obligations when seeking a temporary restraining order without notice in a domestic relations matter.

### Background

The facts are jointly stipulated by the Commission and the Respondent:

1. [The Respondent] is an attorney in good standing, having been duly admitted to practice law in the State of Indiana. . . .

2. [The Husband] was married to [the Wife], and lived with her and their four children.

3. On June 20, 2001, the Respondent filed divorce proceedings as lawyer for the Wife.

4. Also on June 20, 2001, the Respondent filed two different petitions for restraining orders against the Husband.

5. One of the restraining order petitions alleged that the Husband might sell or dissipate the marital property unless restrained.

6. The petition further alleged that the Husband might remove a child from the family home or the court's jurisdiction, or harm or harass the Wife or children unless restrained.

7. The petition also alleged that the Husband used intimidation and harsh punishments to control the Wife and children, and generally described several such punishments but did not include any allegation that there was a threat of imminent harm to the Wife or children.

8. The other restraining order petition was identical, except that it did not include the allegations concerning the Husband's use of intimidation and punishments.

9. The Respondent did not provide the Husband with notice, either oral or written, that she was seeking a restraining order against him until he was served with the dissolution petition, the restraining order petitions, and the orders granting the restraining orders against him, approximately one week after the restraining order petitions were filed and granted.

10. When she filed the restraining order petitions, the Respondent did not provide oral or written notice to the Husband, she did not make a written showing that immediate and irreparable injury, loss or damage would result to the Wife before the Husband could be heard in opposition to the petitions, and she did not certify in writing her efforts to give notice to the Husband or reasons why such notice should not be given.

11. When she filed the petitions with the court and outside the presence of the Husband or counsel for the Husband (the Husband had not yet retained counsel), the Respondent orally provided the presiding judge . . . with information supplementing the written information in the petitions.

12. [The judge] then issued two restraining orders against the Husband restraining him from transferring or dissipating the marital assets, removing a child from the court's jurisdiction and harassing or harming the Wife or children.

13. One of the restraining orders also granted the Wife temporary possession of the marital residence.

14. The restraining order petitions, the restraining orders, the dissolution petition and other papers filed in the case were first served on the Husband at the marital residence on June 27, 2001, by sheriff's deputy.

15. The Husband was compelled to immediately leave the marital residence, pursuant to the restraining orders.

16. The Husband immediately hired counsel and had an emergency hearing scheduled.

17. After that hearing, the Husband was allowed to enter the marital residence to retrieve his clothing and personal effects and was given partial custody of the children.

18. About two weeks later the court held another hearing on custody and the parties' alternating custody of the children was confirmed.

Stipulation of Facts 1–4.

The Commission contends that, by communicating with the judge in connection with the restraining order without notifying the husband, Respondent violated Ind. Professional Conduct Rule 3.5(b) which provides that:

A lawyer shall not ... communicate ex parte with [a judge] except as permitted by law.

Respondent contends that her *ex parte* communication was permitted by law, to wit, Ind. Trial Rule 65(E) governing the issuance of temporary restraining orders in domestic relations cases. The Commission responds that for Respondent's *ex parte* communication to be permissible, she was required to comply with the notice provisions of T.R. 65(B) governing restraining orders generally, not just the language of T.R. 65(E).

*Discussion*

The operative provisions of T.R. 65(B) and T.R. 65(E) are obviously critical to the resolution of this case. They read as follows:

(B) **Temporary restraining order— Notice—Hearing—Duration.** A temporary restraining order may be granted without written or oral notice to the adverse party only if:

(1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and

(2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be required....

. . .

(E) **Temporary Restraining Orders—Domestic Relations Cases.** Subject to the provisions set forth in this paragraph, in an action for dissolution of marriage, separation, or child support, the court may issue a Temporary Restraining Order, without hearing or security, if either party files a verified petition alleging an injury would result to the moving party if no immediate order were issued.

. . .

Respondent's legal argument is that T.R. 65(E) is essentially an exception or a carve-out from T.R. 65(B), the general rule governing temporary restraining orders. As the foregoing provisions make clear, T.R. 65(B) requires two showings: (1) a showing regarding "injury, loss, or damage" and (2) a showing regarding notice; T.R. 65(E) requires one showing, a show-

ing regarding "injury." As long as she makes the requisite showing of injury required by T.R. 65(E), Respondent argues, her ex parte communication is authorized by law and she is not guilty of misconduct.

Even assuming the correctness of Respondent's legal argument, we find Respondent violated Prof. Cond. R. 3.5(b). Trial Rule 65(E) requires "a verified petition alleging an injury would result to the moving party if no immediate order were issued" (emphasis supplied). Our reading of the parties' stipulation is that Respondent and her client made no allegation that "injury would result ... if no immediate order were issued." The allegations were couched in terms of what "might" happen or what had happened in the past. See, e.g., Stipulation no. 6 ("Husband might remove a child. . . ."); no. 7 ("The petition. . . did not include any allegation that there was a threat of imminent harm to the Wife or children."). Trial Rule 65(E) requires an allegation of more than what "might" happen.

We do not, however, agree with Respondent's legal argument. Trial Rule 65(E) exists for the purpose of setting forth an alternative to the T.R. 65(B)(1) showing regarding "injury, loss, or damage" but it does not replace or modify in any way the T.R. 65(B)(2) showing regarding notice.[1] At the time of the conduct at issue in this case, Trial Rule 65(E) set forth the showing regarding injury required to obtain a temporary restraining order in domestic relations cases ("fil[ing] a verified petition alleging an injury would result to the moving party if no immediate order were issued"). But T.R. 65(E) was not an exception or carve-out from the T.R. 65(B)(2)

showing regarding notice; restraining orders issued under the provisions of T.R. 65(E) applicable only in domestic relations cases were also subject to the notice provisions of T.R. 65(B)(2) applicable to all temporary restraining orders.

This can be seen by reviewing the "legislative history" of T.R. 65(B) and T.R. 65(E). When we first adopted T.R. 65(B), it read essentially as it does today, requiring the two showings for "injury, loss, or damage" and notice; it contained no reference to domestic relations cases. Indiana Rules of Court 90 (West 1970). In 1970, we added language to T.R. 65(B) specifying that the "restrictions as to issuance of temporary restraining orders without notice shall not apply to divorce actions." Indiana Rules of Court 126 (West 1971). Effective January 1, 1990, we deleted the exemption language added in 1970 from T.R. 65(B) and replaced it with entirely new language designated T.R. 65(E). New T.R. 65(E) provided that "a joint preliminary injunction" would be issued "in an action for dissolution of marriage, separation, or child support ... on the verified application of either party alleging the injury would result to the moving party if no immediate order were issued." The preliminary injunction would be issued automatically—"without hearing or security"—and prohibit both parties from disposing of marital assets, harassing or abusing the other, and removing a child of the parties from the state. Indiana Rules of Court 129–30 (West 1990). The use of the term "preliminary injunction" in the 1990 amendment was used to distinguish the

---

1. Trial Rule 65(E) also sets forth additional provisions for temporary restraining orders in dissolution of marriage, separation, and child custody cases: the behavior that a restraining order in domestic relations cases will cover and when joint restraining orders are permit- ted and separate restraining orders required. This includes disposing of marital property, harassing or abusing the other party or a child or step-child of the parties, and removing a child of the parties from the state. T.R. 65(E).

requirements of T.R. 65(E) from the notice showing required by T.R. 65(B).

But in 1995, we rewrote T.R. 65(E) to provide that a "Temporary Restraining Order" could be (but was not required to be) issued "in an action for dissolution of marriage, separation, or child support . . . if either party filed a verified petition alleging an injury would result to the moving party if no immediate order were issued." *Indiana Rules of Court* 65 (West 1995). Our substitution of the term "Temporary Restraining Order" for "preliminary injunction" in the 1995 amendment was meant to signify that the requirements of T.R. 65(B)(2) applicable to all temporary restraining orders were henceforth applicable to the restraining orders covered by T.R. 65(E). Put differently, beginning with the 1995 amendment, T.R. 65(E) set forth the injury showing required to obtain temporary restraining orders in dissolution of marriage, separation, and child custody cases; T.R. 65(B)(2) set forth notice requirements for temporary restraining orders generally.

Thus compliance with T.R. 65(B)(2) is required in all situations in which temporary restraining orders are sought, including domestic relations cases. But that is not to say that temporary restraining orders without notice cannot be issued in domestic relations cases. Dissolutions of marriage are among the most contentious matters coming before trial courts. Tempers flare, emotions run high, and resolving divorce-related issues often requires the patience of Job and the wisdom of Solomon. When a marital relationship reaches the point that one of the parties feels compelled to seek a temporary restraining order in many cases, there is a very real possibility that domestic violence has occurred or is likely to occur. Although observing that additional research is needed on the subject, a recent study

from the National Institute of Justice and the Centers For Disease Control and Prevention noted, "[i]t is a common belief that the termination of a relationship poses an increased risk for, or escalation of, intimate partner violence." Patricia Tjaden and Nancy Thoennes, *Office of Justice Programs, Extent, Nature and Consequences of Intimate Partner Violence* 37 (2000). This Court has recognized that the issue of domestic violence is an "escalating societal problem." *In re Walker*, 597 N.E.2d 1271, 1272 (Ind.1992). It would be unwise if not dangerous to require a party seeking a restraining order in such a situation to telegraph the party's intentions by giving prior notice to the very person the party fears will cause injury or harm.

But, of course, T.R. 65(B)(2) does not require a party seeking a temporary restraining order to give notice. Indeed, the whole purpose of T.R. 65(B)(2) is to provide an orderly and constitutional procedure for obtaining temporary restraining orders without notice. That procedure requires setting forth "reasons supporting [the] claim that notice should not be required" but most assuredly does not prohibit the issuance of an order without notice. The fact that intimate partner violence has occurred or is likely to occur or escalate is certainly a good and sufficient reason under T.R. 65(B)(2) that notice not be required. But if this is the case, a party can so state under oath. The filing of boilerplate allegations without specific facts is not sufficient to invoke the court's intervention without notice.

In order to engage in the ex parte communication with the judge on the facts of this case, Respondent was required to "file[ ] a verified petition alleging an injury would result to the moving party if no immediate order were issued," T.R. 65(E); and to "[ . . . ] certif[y] to the court in writing" that no effort had been made to give

notice "and the reasons supporting [her] claim that notice should not be required," T.R. 65(B)(2).

As of the time of the conduct at issue in this case, then, requests for temporary restraining orders in domestic relations cases were subject to the provisions of T.R. 65(E) requiring a showing regarding "injury" and to the general provision of T.R. 65(B)(2) requiring a showing regarding notice. In 2002, the Legislature, with the strong support of the Indiana Judicial Center, enacted comprehensive reform of state law regarding protective orders in domestic and family violence situations. Ind.Code § 34–26–5, as amended by 2002 Ind. Acts 133. Among the statutory requirements for a protective order under this legislation is that the petition "must be verified or under oath." Ind.Code § 34–26–5–3(e). Accordingly, we amended T.R. 65(E), effective July 19, 2002, to provide that "[p]arties wishing protection from domestic or family violence in Domestic Relations cases shall petition the court pursuant to IC 34–26–5." *Indiana Rules of Court* 61 (West 2003). Temporary restraining orders in all other domestic relations cases remain subject to the requirements of both T.R. 65(B)(2) and T.R. 65(E).

In determining the appropriate sanction for Respondent's misconduct, we acknowledge that we have never before explicitly said that temporary restraining orders in domestic relations cases are subject to the requirements of both T.R. 65(B)(2) and T.R. 65(E) and that Respondent's position on this issue is reasonable. As such, we impose no sanction for her failure to provide the court with reasons that notice should not be required. However, as noted above, even if we accepted Respondent's argument that restraining orders in domestic relations cases are subject only to the requirements of T.R. 65(E) and not T.R. 65(B), we would still find her guilty of misconduct for engaging in an ex parte communication with the judge without complying with the requirements of T.R. 65(E) in that she failed to allege that "an injury would result to the moving party if no immediate order were issued." For this misconduct, we find that the appropriate sanction is a private reprimand.