**Larry BOWYER, Appellant–Defendant,**

v.

**INDIANA DEPARTMENT OF NATURAL RESOURCES, Appellee–Plaintiff.**

No. 09A02–0303–CV–259.

Court of Appeals of Indiana.

Nov. 21, 2003.

Robert Leirer, Justice, Logansport, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Sierra L. Cutts, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Larry Bowyer appeals the trial court's order finding him in contempt for violating a temporary restraining order ("TRO") obtained by the Indiana Department of Natural Resources ("DNR"). We reverse.[1]

### Issue

The dispositive issue in this case is whether the trial court abused its discretion in finding Bowyer in contempt. Because the issue presents important procedural considerations, we will also discuss the issuance of the TRO itself.

### Facts

Bowyer is purchasing on contract a campground located on the southern shore of Lake Cicott in Cass County. In January 2000, DNR filed a complaint against Bowyer and the seller of the campground, Karen Garling, alleging that Lake Cicott was a public lake and that Bowyer was dumping construction debris into the lake and altering its shoreline without a DNR permit as required by law. On December 11, 2000, the trial court entered a partial judgment finding that Lake Cicott was a public lake subject to DNR regulation, instead of a private lake as argued by Garling. We affirmed this judgment on appeal. *Garling v. Indiana Dep't of Nat'l Resources,* 756 N.E.2d 1029 (Ind.Ct.App. 2001), *aff'd on reh'g,* 766 N.E.2d 409 (Ind. Ct.App.2002), *trans. denied.*

On March 28, 2001, because Bowyer was continuing to engage in construction activities in Lake Cicott's waters, DNR filed a "Verified Motion for Automatic Temporary Restraining Order Without Notice." Appellant's App. p. 7. On March 30, 2001, without prior notice to Bowyer and without conducting a hearing, the trial court entered an "Automatic Temporary Restraining Order Without Notice" ordering Bowyer to cease "any and all excavation/construction activities, of any nature whatsoever, below the shoreline of Lake Cicott, until this cause is fully determined." Appellant's App. p. 10. The manner in which this TRO was obtained, as well as its duration, is authorized by Indiana Code Section 14–26–2–19(b).

After the TRO was issued, Bowyer ceased construction activities that required entering Lake Cicott's waters. However, he continued work on the campground it-

---

1. We hereby deny Bowyer's request for oral argument.

self. In August 2001, DNR officials concluded (for the first time) that Lake Cicott's "shoreline" was located at 702.2 feet above sea level. This conclusion was reached by examining vegetation and soil on the north and east shores of the lake. Thereafter, officials put up temporary markers indicating the "shoreline" on the north and east shores, but not on the south shore where Bowyer's campground was located. At the time, the actual water level of Lake Cicott was six to seven feet below the 702.2 foot level.

In June 2002, DNR filed a motion to hold Bowyer in contempt for violating the TRO. At a hearing in August 2002, DNR alleged Bowyer had performed work on his campground below the 702.2 foot level that it claimed was Lake Cicott's "shoreline," beginning in April 2001 and continuing through at least October 2001. There was no evidence, however, that Bowyer had performed any work below the actual water line of Lake Cicott. Instead, it appears to be undisputed that all of the work in question had taken place on land.

On October 22, 2002, the trial court entered an order finding Bowyer in contempt for violating the TRO. It fined Bowyer $50,000, which it suspended so long as Bowyer pays $250 per month while he reverses the construction he had been carrying out on the campground. After the trial court failed to rule on Bowyer's motion to correct error and it would have been deemed denied under Indiana Trial Rule 53.3(A), he initiated this appeal.

## Analysis

■ Although it is admittedly implicit in some of his arguments, Bowyer does not make an explicit argument, based on citation to appropriate authorities, that the "Automatic Temporary Restraining Order Without Notice" was void because the manner in which it was obtained violated due process. Ordinarily, a court's order is not void so long as the court had subject matter jurisdiction over the case and personal jurisdiction over the parties. *Martin v. Martin,* 771 N.E.2d 650, 653 (Ind.Ct. App.2002). These two types of jurisdiction appear to have been present in this case; Bowyer does not argue otherwise. We will assume for the sake of argument that the TRO was at most erroneous or voidable, not void, in which case Bowyer was obligated to follow the order unless and until it was vacated, or risk being held in contempt for violating it. *See id.*

■ Nevertheless, we feel compelled to note our grave concerns with the TRO and the statute under which it was obtained. The TRO was issued without notice[2] and without an opportunity for a hearing, which are two fundamentals of due process. *See Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Of course, TROs are not per se unconstitutional. Our supreme court enacted Indiana Trial Rule 65(B) for the purpose of providing an orderly *and constitutional* procedure for obtaining a TRO. *In re Anonymous,* 786 N.E.2d 1185, 1189 (Ind.2003). That rule provides in part:

**2.** DNR's motion for the TRO was filed on March 28, 2001, with an indication that the motion was mailed to Bowyer's counsel on that date. The TRO was entered on March 30, 2001. Bowyer's counsel has repeatedly asserted that he did not receive actual notice of DNR's motion before the TRO was entered. Apparently, DNR's counsel had attempted to phone Bowyer's counsel before the TRO was entered but did not leave a message as to what the call was about; Bowyer attempted to return the call but only reached the voice mail of DNR's counsel. In any event, DNR does not argue that Bowyer had actual notice of its motion for a TRO before it was entered.

A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if: (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be required.

Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed ten [10] days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the whereabouts of the party against whom the order is granted is unknown and cannot be determined by reasonable diligence or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining or-

der shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order.

Indiana Code Section 14–26–2–19(b), under which the DNR obtained the TRO in this case, dispenses with many of Trial Rule 65(B)'s safeguards and in its entirety provides:

> If a defendant continues to violate this chapter after the service of notice of the action and before trial, the plaintiff is entitled, upon a verified showing of the acts on the part of the defendant, to a temporary restraining order without notice. The temporary restraining order is effective until the cause has been tried and determined.

Thus, in a case involving an action brought by the DNR alleging that a defendant is making improper alterations to the shoreline of a public lake, the DNR may seek and obtain a "temporary restraining order" of indeterminate and possibly lengthy duration,[3] without making any attempt to give prior notice to the defendant, without having to offer any justification for not attempting notice, without any hearing before a TRO is issued, and without any requirement that the DNR seek to replace the TRO with a preliminary injunction that is entered only after a hearing with notice is held. In these vital respects, it appears to us that Indiana Code Section 14–26–2–19(b) is in direct conflict with Indiana Trial Rule 65(B).

 It is a fundamental rule of law in Indiana that "in the event of a conflict between a procedural statute and a procedural rule adopted by the supreme court, the latter shall take precedence." *Jackson v. City of Jeffersonville,* 771 N.E.2d 703, 706 (Ind.Ct.App.2002), *trans. denied.*

---

**3.** The TRO at issue in this case had already been in effect for over fourteen months when the DNR first sought to hold Bowyer in contempt for violating it.

"When a statute conflicts with the Indiana rules of trial procedure, the rules of procedure govern, and phrases in statutes which are contrary to the rules of procedure are considered a nullity." *Id.* To be "in conflict," it is not necessary that the rule and the statute be in direct opposition. *Id.* (citing *State v. Bridenhager,* 257 Ind. 699, 704, 279 N.E.2d 794, 796 (1972)). The rule and the statute need only be incompatible to the extent that both could not apply in a given situation. *Id.* A procedural statute may not operate as an exception to a procedural rule having general application. *Id.* A procedural statute that does not conflict with any of the trial rules may be held operative. *Id.* However, any statute conflicting with procedural rules enacted by our supreme court shall have no force or effect. *McEwen v. State,* 695 N.E.2d 79, 89 (Ind.1998).

We agree with DNR that to the extent Trial Rule 65(B) requires a party seeking a TRO to demonstrate that "immediate and irreparable injury, loss, or damage will result" if a TRO is not issued, that requirement is automatically met upon a showing that a defendant is altering the shoreline of a public lake without a permit. Such action is illegal. *See* Ind.Code § 14–26–2–6. Unlawful activity by a party per se meets the "immediate and irreparable injury" requirement for issuing a TRO. *See Carson v. Ross,* 509 N.E.2d 239, 241 (Ind. Ct.App.1987), *trans. denied* (1988). Section 14–26–2–19(b) is, therefore, harmonious with Rule 65(B) to the extent it does not explicitly require a finding of "immediate and irreparable injury" if the TRO is not issued.

That is not the only procedural safeguard in Rule 65(B), however. The rule requires a party seeking a TRO to certify efforts made to contract the opposing party and to provide a reason why notice should not be required; the statute does not. The rule requires that a TRO expire within ten days, unless an extension is sought before then; the statute allows the TRO to run until the end of the litigation, in effect making it a preliminary injunction. The rule requires there to be a hearing for the entry of a preliminary injunction to be held "at the earliest possible time" and requires that the TRO be dissolved if the party that sought it does not seek a preliminary injunction; again, the statute requires no hearing and no provision for dissolving the TRO.

The United States Supreme Court has observed with respect to Federal Rule of Procedure 65, which is similar to Indiana Trial Rule 65:

> The stringent restrictions imposed by ... Rule 65, on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 438–39, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974) (internal footnotes and citations omitted). Indiana Code Section 14–26–2–19(b) appears to create an exception to Rule 65's safeguards. It cannot do so. *See Jackson,* 771 N.E.2d at 706.

However, because Bowyer did not attempt to challenge the TRO until the contempt hearing, we will now analyze whether he was properly held in contempt

for violating it.[4] Willful disobedience of a lawfully entered court order of which the offender had notice is indirect contempt. *Mitchell v. Mitchell,* 785 N.E.2d 1194, 1198 (Ind.Ct.App.2003). Whether a person is in contempt is a matter left to the trial court's discretion. We will reverse a finding of contempt only where an abuse of discretion has been shown, which occurs only when a trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

▆▆▆▆▆ "The trial court must find 'willful disobedience' to hold a party in contempt for violation of court orders." *In re Marriage of Glendenning,* 684 N.E.2d 1175, 1179 (Ind.Ct.App.1997), *trans. denied* (1998). The order allegedly violated must have been so clear and certain that there could be no question as to what a party must do, or not do, and so there could be no question regarding when the order is violated. *Indiana High School Athletic Ass'n, Inc. v. Martin,* 765 N.E.2d 1238, 1241 (Ind.2002). "A party may not be held in contempt for failing to comply with an ambiguous or indefinite order." *Martin,* 771 N.E.2d at 654. Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith. *Burrell v. Lewis,* 743 N.E.2d 1207, 1213 (Ind.Ct.App. 2001).

The trial court's TRO that Bowyer allegedly willfully violated prohibited him from performing "any and all excavation/construction activities, of any nature whatsoever, below the shoreline of Lake Cicott...." Appellant's App. p. 10. The crux of this case is that the order fails to give any definition to the word "shoreline." We conclude that this renders the TRO inherently ambiguous and highly indefi-

nite. The lack of clarity and certainty as to what constituted Lake Cicott's "shoreline," and hence what Bowyer was prohibited from doing, means that the trial court abused its discretion by holding him in contempt for violating the TRO.

"Shoreline" is a word that is subject to a number of possible layperson and legal definitions. One common dictionary defines "shoreline" as "[t]he edge of a body of water." *American Heritage College Dictionary* 1260 (3d ed.2000). The portion of the Indiana Code regulating the alteration of the "shoreline" of a public lake under which the DNR was proceeding against Bowyer allows for three possible definitions of the word:

> As used in this chapter, "shoreline or water line" means:
>
> (1) if the water level has been legally established, the line formed on the bank or shore by the water surface at the legally established average normal level; or
>
> (2) if the water level has not been legally established, the line formed by the water surface at the average level as determined by:
>
> (A) existing water level records; or
>
> (B) if water level records are not available, the action of the water that has marked upon the soil of the bed of the lake a character distinct from that of the bank with respect to vegetation as well as the nature of the soil.

Ind.Code § 14–26–2–4. The water level of Lake Cicott has not been legally established, thus subsection (1) above is inapplicable.

More importantly, when DNR sought and obtained the TRO, it had not under-

---

**4.** We disagree with Bowyer that the TRO automatically expired after ten days; by the order's express language, it did not expire until the litigation between DNR and Bowyer was completed. It was erroneous to allow for such an indefinite duration, but we do not believe it rendered the TRO "void."

taken to find Lake Cicott's "shoreline" under the two alternative definitions in subsection (2). It did not do so until August 2001, well after the TRO was issued and after the majority of the activities by Bowyer of which DNR has complained. Additionally, there is no evidence in the record that DNR ever informed Bowyer of its conclusion that Lake Cicott's "shoreline" rested at 702.2 feet above sea level; the only indications of the "shoreline" were temporary plastic flags placed on the north and east shores of the lake, not on Bowyer's campground on the southern shore. There is no court filing by DNR clarifying where it determined Lake Cicott's "shoreline" to be. Additionally, that determination was the result of specialized expertise based upon vegetation and soil comparisons. DNR also presented no evidence that Bowyer had any idea of how far above sea level his campground lay; indeed, it presented no direct evidence at all as to the level of the campground, only its official's unsupported claim that he saw Bowyer working below the "shoreline," although on dry land.

At the contempt hearing, Bowyer presented conflicting evidence as to where Lake Cicott's "shoreline" was. For example, he presented evidence that a highway running immediately south of the lake built in 1927 was surveyed at the time to have an elevation of 702 feet, which conflicts with the notion that the lake's adjoining "shoreline" is higher than that. He also presented evidence of a federal government geodesic survey from 1962 placing the level of Lake Cicott at 698 feet. Although the trial court was certainly allowed to reject this evidence as to Lake Cicott's actual "shoreline" and conclude that DNR had accurately measured it, this evidence also establishes that the legal definition of a lake's "shoreline" is far from obvious.

In sum, although DNR presented evidence of where it eventually calculated the "shoreline" of Lake Cicott to be, it presented no evidence that Bowyer was aware of its calculation, which was made several months after the TRO prohibiting work below Lake Cicott's "shoreline" was entered. DNR, therefore, failed to establish that the definition of "shoreline" was so obvious that Bowyer was on clear notice of what he could and could not do so as to support the conclusion that he willfully violated the TRO.[5] It would appear that Bowyer took the phrase "below the shoreline" to mean he could not work in Lake Cicott's waters, but that he could work around it. This conclusion is bolstered by the fact that he had been working in the water before the TRO was entered, but not afterwards. Additionally, DNR's motion for the TRO referenced only Bowyer's continuing "excavation activities *below the actual waterline.* . . . The legality of actions by Defendant Bowyer above the actual water level, but below the legal shoreline, will be determined once DNR finishes determining the lake's legal water level." Appellant's App. p. 8 (emphasis added). In conjunction with the undefined word "shoreline," this would seem to indicate that the word was supposed to have the common lay definition of the water's edge, a boundary that Bowyer did not cross after the TRO was entered.[6] DNR also

---

**5.** Interestingly, although the trial court sua sponte issued some findings and conclusions with the contempt order, it included no finding that Bowyer had "willfully" violated the TRO. It is also curious that the trial court's findings refer to specific dates on which Bowyer allegedly violated the TRO, although DNR's only witness did not mention any of these specific dates.

**6.** Additionally, at the hearing on Bowyer's motion to correct error, the trial court invited the parties to supplement the record with regard to communications between DNR's

notes that Bowyer never sought to have the word "shoreline" clarified by the trial court after the TRO was entered. This is irrelevant, however, to the question of whether he willfully violated the trial court's order as it was actually written.[7] Because of the vagueness of that order, the trial court abused its discretion in holding Bowyer in contempt for violating it.

### Conclusion

We reiterate that although Bowyer was obligated to comply with the TRO to the extent possible, a statute cannot create an exception to procedures set forth in rules promulgated by our supreme court. If a party wishes to obtain a TRO, it must comply with Indiana Trial Rule 65(B). As for whether Bowyer willfully violated the TRO, its failure to define Lake Cicott's "shoreline" rendered it ambiguous, and Bowyer cannot be held in contempt for allegedly violating it. We reverse the finding of contempt.

Reversed.

DARDEN, J., and MAY, J., concur.

and Bowyer's attorneys at the time the TRO was entered. Bowyer's attorney thereafter filed a copy of a fax he had received on March 30, 2001, from DNR's attorney, which stated, "Please advise your client, per the TRO, that he *cannot* perform any activities below water level of lake." Appellant's App. p. 31 (emphasis in original).

7. We should observe that the entirety of this litigation regarding Bowyer's alleged contempt may well have been avoided had the TRO been entered only after a hearing and notice to Bowyer, in which case the meaning of the word "shoreline" might have been hashed out and agreed to by the parties.