Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 10 2014, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT
BALTASAR REGALADO:

**PATRICK B. McEUEN**
McEuen Law Office
Portage, Indiana

ATTORNEY FOR APPELLEE
PAULA HEFFELFINGER:

**DAVID K. PAYNE**
Braje, Nelson & Janes, LLP
Michigan City, Indiana

ATTORNEYS FOR APPELLEE
1st SOURCE BANK:

**ANDREW LUCAS**
**HUGO MARTZ**
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE MATTER OF | ) | |
| SUPERVISED ESTATE OF | ) | No. 64A04-1401-ES-14 |
| JOSEPH JAMES REGALADO. | ) | |
| | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Jeffrey L. Thode, Special Judge
Cause No. 64D02-0410-ES-9659

October 10, 2014

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

This is the latest in a series of appeals stemming from the estate of Joseph Regalado (the Estate). In this most recent appeal, Baltasar Regalado challenges the trial court's order finding him in contempt for failing to comply with an order that he submit to DNA testing to establish whether he is the biological father of heir Paula Heffelfinger. Finding that this appeal is an impermissible collateral attack on an order that was not appealed and that the trial court did not lack personal jurisdiction over Baltasar, we affirm.

## FACTS

As this Court has explained before:

> Joseph James Regalado received a fifteen million dollar settlement from the City of Chicago in 2000 and died intestate in 2004. Because he left no surviving spouse or issue, his estate is to be distributed to his surviving parents, brothers, sisters, and issue of his deceased brothers and sisters. . . . Joseph's father[, Baltasar Regalado,] married Paula[ Heffelfinger]'s mother in 2003, thirty-five years after Paula's birth. When the marriage was annulled in 2005, [Baltasar] acknowledged Paula to be his biological child.

Regalado v. Estate of Regalado, 933 N.E.2d 512, 515 (Ind. Ct. App. 2010); see also Regalado v. Estate of Regalado, 2013 WL 1210282 (Ind. Ct. App. Mar. 26, 2013); In re Paternity of Duran, 900 N.E.2d 454, 458 (Ind. Ct. App. 2009).

In October 2004, Baltasar filed a petition seeking to be appointed administrator of the Estate. Eventually, two separate attorneys entered appearances on Baltasar's behalf, stating that they represented him individually. Baltasar sought a continuance and

represented to the trial court that he wished these attorneys to be substituted as counsel of record for him personally. Later, he propounded interrogatories to Paula.

On August 29, 2013, the trial court ordered Baltasar to submit to DNA testing by September 20, 2013, to determine whether he is Paula's biological father (the DNA Order). Baltasar filed a motion to correct error, which the trial court denied on October 4, 2013. Baltasar did not appeal. Baltasar also did not submit to DNA testing. On October 4, 2013, the trial court again ordered Baltasar to submit to DNA testing, and Baltasar again failed to appeal or comply with the order. On December 19, 2013, the trial court found Baltasar in civil contempt for failing to comply with the DNA Order. As a sanction, the trial court ordered that, until Baltasar submits to a DNA test, he shall be levied a fine on the following schedule:

> $200.00 per day from December 10, 2013, through December 24, 2013;
> $500.00 per day from December 25, 2013 through January 7, 2014; and
> $1,000.00 per day from January 8, 2014 thereafter.

Appellant's App. p. 61. Baltasar now appeals.

## DISCUSSION AND DECISION

Baltasar argues that the trial court did not have authority to issue the DNA Order and that the DNA Order violated the Fourth Amendment to the United States Constitution. We will reverse a trial court's finding of contempt only if there is no evidence or reasonable inferences that support the finding. In re Paternity of Jo.J., 992 N.E.2d 760, 772 (Ind. Ct. App. 2013). This Court has explained contempt as follows:

> [u]ncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt. Contempt proceedings are not designed to provide a review of the appropriateness of previous orders. Even if a court's order is erroneous, it must still be obeyed until reversed on appeal. A party's remedy for an erroneous order is appeal and disobedience of the order is contempt.

Evans v. Evans, 766 N.E.2d 1240, 1243 (Ind. Ct. App. 2002) (internal citations omitted). In other words, "[c]ollateral attack of a previous order is allowed in a contempt proceeding only if a trial court lacked subject matter jurisdiction or personal jurisdiction to enter the order." Kennedy v. Town of Gaston, 923 N.E.2d 988, 995 (Ind. Ct. App. 2010).

In this case, it is undisputed that Baltasar was aware of the DNA Order. It is likewise undisputed that he has knowingly failed to comply with that order. These facts suffice to support the trial court's contempt finding. The only remaining issues we may consider are whether the trial court lacked subject matter jurisdiction or personal jurisdiction to enter the DNA Order. Baltasar does not challenge the trial court's subject matter jurisdiction on appeal; therefore, all that remains to consider is the issue of personal jurisdiction.

It is well established that a party who seeks affirmative relief from a court voluntarily submits himself to the jurisdiction of that court and is thereafter estopped from challenging the court's personal jurisdiction. Trigg v. Al-Khazali, 881 N.E.2d 699, 702 (Ind. Ct. App. 2008). In this case, the record reveals that Baltasar has consistently and repeatedly sought relief from the trial court in the Estate proceedings: (1) he filed a

4

petition seeking to be appointed administrator of the Estate; (2) two separate attorneys entered appearances on his behalf and Baltasar later represented to the trial court that they represented him personally; (3) Baltasar sought a continuance in the Estate proceedings; and (4) Baltasar propounded interrogatories to Paula. These actions establish that Baltasar has both sought affirmative relief from the trial court and acted in a manner consistent with party status. Having assented to the personal jurisdiction of the trial court in the early stages of the proceedings, Baltasar may not now claim that personal jurisdiction no longer exists. Under these circumstances, we find that the trial court had personal jurisdiction over Baltasar.

Baltasar's arguments amount to an impermissible collateral attack on the DNA Order. He did not appeal the DNA Order or the denial of his motion to correct error. As a result, these arguments are unavailing. See Martin v. Martin, 771 N.E.2d 650, 653 (Ind. Ct. App. 2002) (holding that "[c]ontempt proceedings are not actions designed to correct errors previously made by trial courts, even errors of a constitutional dimension") (emphasis added).

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.