PLAZA GROUP PROPERTIES, LLC,
Robert W. Allen and Fuel in
Dale, L.L.C., Appellants,

v.

SPENCER COUNTY PLAN COMMIS-
SION and Spencer County Board
of Commissioners, Appellees.

No. 74A04–0901–CV–51.

Court of Appeals of Indiana.

Aug. 21, 2009.

John D. Cox, Lynch, Cox, Gilman & Mahan, PSC, Louisville, KY, Attorney for Appellants.

John G. Wetherill, Rockport, IN, for Spencer County Plan Commission.

Francis H. Lueken, Jr., Ferdinand, IN, for Spencer County Board of Commissioners.

Scott D. Bergthold, Chattanooga, TN, Pro Hac Vice.

## OPINION

BAILEY, Judge.

### Case Summary

The Spencer County Plan Commission and the Spencer County Board of Commissioners (collectively "Spencer County") filed an information to show cause, alleging that Plaza Group Properties, LLC, Robert W. Allen, and Fuel in Dale, L.L.C. (collectively "Defendants") were violating an order issued by the Spencer Circuit Court. The trial court found the Defendants to be in contempt, ordered them to pay $340,000 in fines, in addition to attorney and expert-witness fees, and prohibited the operation of the Defendants' business for at least one year and until they paid in full the fines and fees ordered therein.

The Defendants appeal. We affirm in part, reverse in part, and remand.

### Issues

The Defendants raise six issues, which we consolidate and reorder as follows:

I. Whether the Defendants are precluded in this appeal from arguing that the applicable ordinances were unconstitutional.

II. Whether Robert W. Allen and Plaza Group Properties, LLC are judicially estopped from denying their operation of the business.

III. Whether the trial court abused its discretion in finding the Defendants in contempt;

IV. Whether the fine is punitive; and

V. Whether the one-year closure of the Defendants' bookstore violates their First Amendment rights.

Spencer County presents the sole issue of whether it should receive attorney fees, asserting that the appeal is frivolous.

### Facts and Procedural History

The Defendants purchased a truck stop in Spencer County and operated a motel, a convenience store, and another building ("main building"). In 2005, Spencer County sought injunctive relief, alleging that the Defendants were violating county ordinances in their operation of a "sexually oriented business." Appellant's Appendix at 26–27. The parties soon entered an "Agreed Preliminary Injunction Order" ("Agreed Order"), which was approved by the trial court. Appellee's Appendix at 3. The Agreed Order provided that the Defendants were "preliminarily enjoined from operating a sexually oriented business, as defined in Spencer County Ordinance No.2005–11, on any of the premises described in the Amended Complaint." *Id.* at 4.

In answering an amended complaint filed by Spencer County, the Defendants admitted that they advertised "lap dances," advertised "preview booths," and produced a written advertisement that referenced "TABLE DANCES," "LAP DANCES," AND "VIP BOOTHS." Appellee's Appendix at 8, Appellant's App. at 122. In addition, the Defendants asserted that Spencer County's ordinances were unconstitutional and violated: (1) the First Amendment; (2) the First, Fifth, and Fourteenth Amendments because they were vague and overbroad; and (3) the Defendants' Equal Protection rights under the Fifth and Fourteenth Amendments. The Defendants stated that they "were operating their business in good faith." Appellee's App. at 11. They counterclaimed, pursuant to 42 U.S.C. § 1983, alleging that Spencer County enacted its ordinances "for the specific purpose of suppressing and silencing the protected expression presented by Defendants." *Id.* at 13. Later, in opposing a motion for

summary judgment filed by the county, the Defendants wrote:

> Defendants, Plaza Group Properties, Robert W. Allen, and Fuel in Dale, L.L.C. (collectively, "Defendants") have been attempting for over six months to open and operate a legitimate retail business establishment at the premises, . . . which business includes the sale of some sexually-oriented, non-obscene, adult materials presumptively protected by the United States Constitution.

*Id.* at 21 (parenthetical in original).

While Spencer County's motion for summary judgment was pending, it filed an information to show cause, alleging that the Defendants were violating the Agreed Order. On January 17, 2007, the trial court found that the Defendants were violating the Agreed Order by operating an adult bookstore and an adult cabaret. Accordingly, it ordered the Defendants to pay $5635 in attorney fees within forty-five days of the order, as well as a fine of $10,000.

The trial court then granted partial summary judgment for Spencer County. Although the Defendants had identified vagueness and Equal Protection concerns in their answer to the amended complaint, the court noted that "there has been no real argument that the ordinances are in any way vague, overbroad or violative of anyone's equal protection rights." *Id.* at 268. This Court affirmed the trial court's partial summary judgment in *Plaza Group Properties, LLC v. Spencer County Plan Commission*, 877 N.E.2d 877 (Ind.Ct.App. 2007), *trans. denied* ("*Plaza I* "). In *Plaza I*, we held that Spencer County Ordinance 2005–11 did not violate the First Amendment. *Id.* at 895.

While the appeal was pending, Spencer County filed a second information to show cause. The trial court again found the Defendants to be in contempt of the Agreed Order. It ordered the Defendants to pay the county's attorney fee of $9500 within sixty days and a fine of $30,000. The Defendants appealed.

On October 15, 2008, Spencer County filed another information to show cause, alleging that the Defendants were continuing to violate the 2006 Agreed Order. Attached were the affidavits of Deputy Sheriff Chris Faulkenberg ("Deputy Faulkenberg"), correctional officer Lupe Martinez, Jr. ("Martinez"), Detective Christopher King ("Detective King"), and Theresa Cail, the Spencer County planning and zoning administrator ("Cail"). After an evidentiary hearing, the trial court issued an order in which it: found forty-six violations; ordered the Defendants to pay $340,000 in fines, $20,000 in attorney fees, and $2468 in expert-witness fees; ordered the Defendants to cease all operations in the main building; and directed the Spencer County Sheriff to assist the County in enforcing the order.

The Defendants moved for reconsideration or a stay of execution pending appeal. Fifteen days later, they filed a notice of appeal, as well as a "Motion to Correct and/or Clarify Order." Appellant's App. at 13. A newly-appointed special judge denied the motion for reconsideration a week later.

## Discussion and Decision

### I. *Issue Preclusion*

 The Defendants argue that their Due Process rights were violated because the applicable ordinances were vague. "Collateral estoppel or issue preclusion bars subsequent litigation of an issue necessarily adjudicated in a former suit if the same issue is presented in the subsequent suit." *Bourbon Mini–Mart, Inc. v. Gast Fuel & Servs., Inc.*, 783 N.E.2d 253, 257 (Ind.2003) (quoting *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 968 (Ind.1998)). "Issue

preclusion applies only to matters actually litigated and decided, not all matters that could have been decided." *Miller Brewing Co. v. Ind. Dep't of Revenue*, 903 N.E.2d 64, 68 (Ind.2009). Where collateral estoppel applies, the former adjudication is conclusive in the subsequent action even if the two actions are on different claims. *Afolabi v. Atl. Mortgage & Inv. Corp.*, 849 N.E.2d 1170, 1175 (Ind.Ct.App.2006). "[G]enerally facts available at the time of the first suit are foreclosed in a subsequent suit, as are new arguments based on the same legal theory." *Miller Brewing*, 903 N.E.2d at 68. We have used a two-part analysis to determine whether issue preclusion applies: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case. *Afolabi*, 849 N.E.2d at 1175.

Our supreme court has "followed federal precedent in applying issue preclusion." *Miller Brewing*, 903 N.E.2d at 68. Accordingly, we observe that the United States Supreme Court has described the doctrine as follows:

> Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.

*Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

In their answer, the Defendants asserted that Spencer County Ordinance 2005–11 violated the First, Fifth, and Fourteenth Amendments because it "contain[s] vague and overbroad definitions." Appellee's App. at 11. However, the trial court later granted partial summary judgment for Spencer County and observed that "there has been no real argument that the ordinances are in any way vague, overbroad or violative of anyone's equal protection rights." *Id.* at 268. On review of that order in *Plaza I*, we held that Spencer County Ordinance 2005–11 was constitutional. *Plaza I*, 877 N.E.2d at 895. The Defendants had a full and fair opportunity to litigate the constitutionality of the ordinance in *Plaza I*. Accordingly, they are now precluded from arguing that the ordinances were unconstitutionally vague.

## II. *Judicial Estoppel*

▮ Second, the Defendants argue that "there was no evidence that two of the Defendants [Robert W. Allen and Plaza Group Properties, LLC] committed any contemptuous acts or violated any Ordinance, or even had any control or even interest in the operation of the business other than as lessor of the property in question." Appellant's Brief at 1. Judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted. *PSI Energy, Inc. v. Roberts*, 829 N.E.2d 943, 957 (Ind.2005), *abrogated on other grounds by, Helms v. Carmel High Sch. Vocational Bldg. Trades Corp.*, 854 N.E.2d 345 (Ind. 2006). "[J]udicial estoppel precludes a party from repudiating assertions in the party's own pleadings." *Id.* In answering the amended complaint and in responding to Spencer County's motion for summary judgment, the Defendants asserted the following:

> The Defendants advertised "lap dances," "preview booths," "TABLE DANCES," and "VIP BOOTHS." Appellee's App. at 8; Appellant's App. at 122.

The Defendants "were operating their business in good faith." Appellee's App. at 11.

Spencer County was "silencing the protected expression presented by Defendants." Appellee's App. at 13.

"Defendants, Plaza Group Properties, Robert W. Allen, and Fuel in Dale, L.L.C. (collectively, 'Defendants') have been attempting for over six months to open and operate a legitimate retail business establishment...." Appellee's App. at 21 (parenthetical in original). Thus, the Defendants have acknowledged advertising the business, operating it in good faith, expressing themselves through operation of the business, and attempting to open and operate a legitimate business. Based upon their previous representations, Robert W. Allen and Plaza Group Properties, LLC are judicially estopped from denying their operation of the business.

### III. Sufficiency of the Evidence

#### A. Standard of Review

■ The Defendants argue that the trial court clearly erred in making its findings. Whether a person is in contempt of a court order is a matter left to the trial court's discretion. *Evans v. Evans*, 766 N.E.2d 1240, 1243 (Ind.Ct.App.2002). "On appeal of claims tried by the court ..., the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind.2005). "We reverse a trial court's finding of contempt only if there is no evidence or inferences drawn therefrom that support it." *Cowart v. White*, 711 N.E.2d 523, 531 (Ind.1999), *clarified on reh'g on other grounds by*, 716 N.E.2d 401 (Ind.1999).

#### B. Ordinance and Findings

Spencer County Ordinance 2005–11 governs the operation of a sexually oriented business; specifically, it prohibits:[1]

> Operating an adult bookstore, an adult cabaret, or a sexual device shop without a license, past midnight, or within 1000 feet of a residence;
>
> Allowing a person therein to appear in a state of nudity;
>
> Allowing a semi-nude dancer to touch a patron or to be within six feet of a patron.

Based upon investigations conducted on seven nights in September and November of 2008, the trial court found and listed a total of forty-six violations of Ordinance 2005–11, as summarized below:

| Provision | Prohibited Conduct | Violations |
|---|---|---|
| § 4(a) | operating sexual device shop without a license | 5 |
| § 4(a) | operating adult bookstore without a license | 5 |
| § 4(a) | operating adult cabaret without a license | 4 |
| § 13 | operating an adult bookstore past midnight | 2 |

---

1. Section 2 of Spencer County Ordinance 2005–11 defines, among other things, the following terms:

 "Sexual Device" means any three (3) dimensional object designed and marketed for stimulation of the male or female genital organ or anus or for sadomasochistic use or abuse. . . .

 "Sexual Device Shop" means a commercial establishment that regularly features sexual devices.

 "Sexually Oriented Business" means [among other things] an "adult bookstore," an "adult cabaret," . . . [or] a "sexual device shop."

| § 13 | operating an adult cabaret past midnight | 4 |
| § 18(a) | allowing nudity in adult cabaret | 4 |
| § 18(b) | allowing semi-nude dancer within 6 feet of patron | 4 |
| § 18(c) | allowing semi-nude dancer to touch patron | 4 |
| § 21(b)(2) | operating sexual device shop < 1000 feet of residence | 5 |
| § 21(b)(2) | operating adult bookstore < 1000 feet of residence | 5 |
| § 21(b)(2) | operating adult cabaret < 1000 feet of residence | 4 |
| | TOTAL | 46 |

## C. Evidence regarding Adult Bookstore

The Defendants argue there was insufficient evidence that they operated an adult bookstore. Ordinance 2005–11 includes the following definitions:

"Adult Bookstore" means a commercial establishment which, as a principal part of its business, offers for sale or rental ... [images] characterized by their emphasis upon the display of "specified sexual activities" or "specified anatomical areas."

A *"principal part of its business"* means that the commercial establishment:

[a-e] [has at least 35% of displayed merchandise, wholesale or retail value of displayed merchandise, revenues, or interior business space;] or

(f) maintains an *"adult arcade,"* which means any place to which the public is permitted or invited wherein coin-operated or slug-operated or electronically, electrically, or mechanically controlled still or motion picture machines, projectors, or other image-producing devices are regularly maintained to show images to five or fewer persons per machine at any one time, and where the images so displayed are characterized by their emphasis upon matter exhibiting "specified sexual activities" or specified "anatomical areas."

"Specified Sexual Activity" means any of the following:

(a) intercourse, oral copulation, masturbation or sodomy; or

(b) excretory functions as a part of or in connection with any of the activities described in (a) above.

"Specified Anatomical Areas" means and includes:

(a) Less than completely and opaquely covered: human genitals; pubic region; buttock; and female breast below a point immediately above the top of the areola; and

(b) Human male genitals in a discernibly turgid state, even if completely and opaquely covered.

Appellant's App. at 102–07 (emphases added). Thus, the ordinance defines an adult bookstore based upon either the use of cash-operated machines for viewing images or the offering of merchandise, of which at least 35% is sexually explicit.

The trial court found that "[t]he evidence is abundantly clear that there were approximately 16 small rooms which contained coin-operated machines which showed images with an emphasis on specified sexual activities or specified anatomical areas." *Id.* at 16. Also, the trial court found the Defendants to have operated an adult bookstore on five of the seven nights of the investigation: September 12, 14, and 16, as well as November 25 and 26, 2008. However, the trial court did not find that sexually explicit material comprised 35% of any of the required criteria. Accordingly, the trial court's finding that the Defendants operated an adult bookstore relied upon its finding that they operated an adult arcade.

*Friday, September 12.* Deputy Faulkenberg testified that he did not observe the peep show area on Friday, September 12. Spencer County's brief does not direct us to any evidence in the record regarding the operation of an adult arcade on September 12, 2008.

*September 14.* In his affidavit, Deputy Faulkenberg stated that he observed at least fourteen small rooms, equipped with a chair, a television, and a mechanism for accepting cash. The televisions played movies depicting genitalia and sexual acts.

*September 16.* In his affidavit, Det. King stated that he observed "16 peep show booths," containing a video screen and buttons for changing channels. After inserting a dollar bill, he observed "graphic depictions of male and female genitals." *Id.* at 149–50.

*November 25.* Carl Saxby, professor of marketing at the University of Southern Indiana, testified that he observed the peep show booths and that the movies in them were sexually explicit.

*November 26.* Det. King testified that the peep show booths were operating the same on November 26 as they had operated on September 16.

Det. King also testified that the business manager told him that there were 180 channels, 90 of which were sexually explicit. Based upon this evidence, the record does not support the trial court's finding that the Defendants operated an adult bookstore on September 12, 2008. For the other four nights in question, there was evidence to support the trial court's finding. Of the forty-six violations, three of them pertained to the operation of an adult bookstore on September 12. Accordingly,

we remand with instructions to reduce the Defendants' fine by $22,500.[2]

## D. Evidence regarding Defendants' Knowledge of Adult Cabaret

 The Defendants also assert that "there was insufficient evidence that Plaza Group had any knowledge that dancers were appearing in a state of nudity or semi-nudity when giving private dances, and thus liability could not have been imputed to them or the company for the illegal actions of others." Appellants' Br. at 22. The trial court found that the Defendants operated an adult cabaret on four days, September 12 to 15. Spencer County Ordinance 2005–11 defines the following terms:

> "Adult Cabaret" means a commercial establishment, whether or not alcoholic beverages are served, which regularly features persons who appear semi-nude. "Semi–Nude or State of Semi–Nudity" means the showing of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point, or the showing of the male or female buttocks.

Appellant's App. at 103, 105.

In his affidavit and in testifying, Deputy Faulkenberg stated that female dancers repeatedly revealed their buttocks and their breasts—both while dancing on stage and while sitting on him. He observed this conduct on September 12, 14, and 15. Martinez stated in his affidavit that he observed the same behavior on September 13.

Shannon Sumbles ("Sumbles"), who danced on the premises for more than two months in 2008, testified that she repeatedly exposed her breasts and that she

---

**2.** Per the ordinance, the fine for the first violation was $2500 and the fine for each subsequent violation was $7500. 3 × $7500 = $22,500. Accordingly, on remand, the fine will be $317,500, as $340,000–$22,500 = $317,500.

was never reprimanded for doing so. The Defendants cross-examined her as follows:

Q: Anybody in management ..., did Tony ever tell you that you should flash yourself and expose your private parts to the patrons?

A: No.

Q: Did he ever tell you that you're not supposed to do those things?

A: Well yeah.

Q: It was a rule. You knew it was a rule?

A: Everybody broke the rules.

Transcript at 84–85. On redirect, Sumbles testified that the manager never terminated anyone for revealing herself. She added that the rules "were put there to protect the establishment." *Id.* at 86.

There was evidence that Spencer County's witnesses observed the operation of an adult cabaret on all four relevant nights and that the Defendants allowed the dancers to reveal themselves. Accordingly, the trial court did not abuse its discretion in finding that the Defendants operated an adult cabaret on September 12, 13, 14, and 15, 2008.

### IV. Fine

 The Defendants argue that the fine, $317,500 in light of our above holding,[3] was unduly punitive. "Contempt is for the benefit of the party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party." *Cowart*, 711 N.E.2d at 530. The primary objective of a civil contempt proceeding is not to punish, but to coerce behavior and to compensate the aggrieved party. *Evans*, 766 N.E.2d at 1245. The amount of damages does not lie in the discretion of the court. *Id.* The loss must be established by satisfactory evidence. *Id.*

Here, the trial court had, on two previous occasions, found the Defendants to be in contempt and ordered them to pay fines of $10,000 and $30,000. In the contempt order now appealed, the trial court found that "[m]onetary fines do not appear to have deterred the defendants' behavior." Appellant's App. at 15. It also found as follows:

The defendants have shown a pattern of bad behavior since the time they first began doing business in Spencer County. Initially, they showed a total disregard for the building codes of Spencer County. Next, they quickly violated this Court's preliminary injunction and showed a general lack of respect for the authority of this Court. And they have routinely violated this Court's permanent injunction showing their disdain for abiding by the rules ...

... The Court has heard for a second time about how these defendants may have "pushed the envelope." That is certainly true. But now the time has come for this Court to close that envelope.

*Id.* at 19. The trial court calculated the fine based upon the provisions of the applicable ordinance and evidence offered regarding a seven-day investigation, conducted in September and November of 2008. As the trial court's previous two orders had failed to coerce the Defendants' compliance with its order, we conclude that the instant fine was coercive and compensatory, not punitive. Accordingly, the trial court did not err in entering the fine, except as otherwise addressed herein.

### V. First Amendment

 The trial court ordered the Defendants to "cease all business operations in what has commonly been referred to as

---

**3.** *See* footnote 2.

the main building on the premises of the defendants for a period of one year" and that they "shall not relocate any of their business operations in the main building into any other building on the premises of the defendants." *Id.* at 20. The Defendants argue that the closing of the bookstore constituted "an unlawful and unconstitutional prior restraint on presumptively protected First Amendment activities." Appellants' Br. at 27.

In *Arcara v. Cloud Books, Inc.,* as here, the respondents operated an adult bookstore, including booths for viewing sexually explicit movies. Based upon an investigation revealing illicit sexual activities occurring on the premises, local authorities sought to close the bookstore. The United States Supreme Court began its analysis by noting that the respondents' activity manifested "absolutely no element of protected expression." *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 705, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986). The *Arcara* Court identified "the fallacy of seeking to use the First Amendment as a cloak for obviously unlawful public sexual conduct by the diaphanous device of attributing protected expressive attributes to that conduct. First Amendment values may not be invoked by merely linking the words 'sex' and 'books.'" *Id.* The Supreme Court therefore held that the one-year closure of the bookstore did not violate the First Amendment. *Id.* at 707, 106 S.Ct. 3172. Based upon this authority, the closure of the Defendants' bookstore for one year did not violate their First Amendment rights.

### VI. County's Request for Appellate Attorney Fees

 Spencer County argues that the instant appeal is frivolous; it therefore requests appellate attorney fees, pursuant to Indiana Appellate Rule 66(E). "[A] discretionary award of damages has been recognized as proper when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Orr v. Turco Mfg. Co.,* 512 N.E.2d 151, 152 (Ind.1987). In considering a request for appellate attorney fees, we use extreme restraint because of the potential chilling effect upon the exercise of the right to appeal. *Thacker v. Wentzel,* 797 N.E.2d 342, 346 (Ind.Ct.App.2003).

As a result of the Defendants' appeal, we are reducing the fine by $22,500. We decline to find that the appeal was permeated with meritlessness or frivolity. Accordingly, Spencer County's request for appellate attorney fees is denied.

### Conclusion

The Defendants were precluded from arguing that Spencer County Ordinance 2005–11 was unconstitutional and that two of the Defendants did not operate the business. Furthermore, the one-year closure of the Defendants' bookstore did not violate their First Amendment rights.

The fine was not punitive. However, of the forty-six contemptuous acts found to have occurred, the record does not support the trial court's finding in three of them. Accordingly, we remand with instructions to reduce the fine from $340,000 to $317,500.

We deny the county's request for appellate attorney fees.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and BRADFORD, J., concur.